AMERICAN RELIANCE INSURANCE COMPANY

V.

ROBERT LEE MITCHELL, III, AN INFANT, ET AL.

Record No. 881073

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

\* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Edwin A. Gendron, Jr. (Gendron & Kirby*, on brief), for appellant.

*Robert W. Mann (Young, Haskins, Mann & Gregory*, on brief), for appellees.

Justice Compton delivered the opinion of the Court.

In this insurance case, we determine on stipulated facts if either of two exclusions in a farmers comprehensive personal liability policy bars coverage for a plaintiff's injuries.

In September 1983, appellee Robert Lee Mitchell, III, a plaintiff below, was injured in a fall from a truck being operated on a public highway in Patrick County. On the day of the accident, the plaintiff, age 14, had been assisting in "getting up" hay on the farm of Winifred Owens.

Prior to the day in question, neighboring farmers Owens, Berkley Mitchell (the plaintiff's grandfather), and Tommy Inman had agreed orally to harvest Owens' hay "on shares." Mitchell and Inman were to be responsible for providing equipment, hiring "the help," cutting and collecting the hay, and placing it in the three farmers' barns.

At the time, appellant American Reliance Insurance Company had issued to Owens and Inman separate farmers comprehensive liability policies providing personal liability and medical payments coverage. Pertinent to this case, the policies excluded coverage for "bodily injury to any farm employee . . . arising out of and in the course of his employment by any insured." In addition, the policies excluded coverage for "bodily injury . . . arising out of the . . . operation [or] use . . . of . . . any motorized vehicle . . . loaned to any insured."

In order to provide workers for the operation, the farmers "just had to get whoever they could get." They recruited three "Bowman boys" and another person, who were paid cash at the end of the day for work completed. No workers' compensation, social security or other benefits were provided for the persons engaged in "getting up the hay." During the course of the activity, Inman's wife, as well as the plaintiff's mother, without compensation, drove tractors.

On the day of the accident, Inman's son, age 13, "called" the plaintiff and asked if he would "like to get up the hay after school." Until the plaintiff was hurt, Inman "hadn't given any thought" to compensating the "boys" for their work, although Inman stated he would have paid them "something because you don't expect people to help you get up hay for nothing." Inman's son expected to earn about three dollars per hour, and stated that he and the plaintiff were "hoping" to "earn some extra money." On previous occasions, when the plaintiff had "done work" for his

grandfather, he was paid "something"; at other times he was not paid and assumed "he was just helping his grandfather."

At the time of the injury, Inman's son and the plaintiff had worked for less than an hour loading and unloading hay. The workers were joined by Richard Eugene Parker, Inman's father-in-law who was visiting from Florida. Parker "apparently volunteered his services and his pickup truck to assist in getting up the hay, primarily to be with his grandson."

Upon Parker's arrival on the scene, Inman suggested that his son and the plaintiff load hay onto Parker's truck. With Parker supervising the two boys, several trips were made to one of the barns, with the boys riding on top of the hay. At the time of the accident, Parker's vehicle was leaving Owens' farm when the truck struck a "mud hole." The hay load shifted and the plaintiff fell, striking his head on the hard surfaced highway.

During the evening following the injury, Inman paid $10 to both his son and the plaintiff. These payments were prompted by a suggestion from the insurance agent who had sold the policies to Owens and Inman. The agent, intending to "invoke coverage," according to the stipulation, mistakenly indicated to Inman that it was important the two boys be paid to demonstrate "that they be working for [Inman]."

The plaintiff and his parents, appellees Jeanette P. Mitchell and Robert Lee Mitchell, Jr., made claims against the insurer for the plaintiff's injuries and associated medical expenses. The claims were based on allegations that the farmers and Parker negligently supervised the plaintiff, that Parker negligently operated his truck, and that these acts concurred to cause the plaintiff's injuries.

When the insurer failed to pay the claims, the plaintiff and his parents instituted the present declaratory judgment proceeding. They sought a declaration that the policies in question provide liability and medical payments coverage for the benefit of the plaintiff and his parents.

Upon consideration of the stipulation of facts and argument of counsel, the trial court ruled against the insurer. The court declared that the language of the exclusions was ambiguous and that neither the employee exclusion nor the motor vehicle exclusion precluded coverage for the claims asserted. Accordingly, the court decided that the insurer was bound to defend any "liability action" brought against the insureds arising from the accident, and that it was obligated, to the extent of their applicable coverage, to

pay any final judgment rendered in connection with such litigation. We awarded the insurer this appeal from the July 1988 final order.

Initially, settled principles applicable here should be reviewed. Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. *Johnson* v. *Insurance Co. of North America*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous. *State Farm Mutual Ins. Co.* v. *Gandy*, 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989). An ambiguity, if one exists, must be found on the face of the policy. *Nationwide Mutual Ins. Co.* v. *Wenger*, 222 Va. 263, 268, 278 S.E.2d 874, 877 (1981). And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. *Lincoln National Life Ins. Co.* v. *Commonwealth Container Corp.*, 229 Va. 132, 136-37, 327 S.E.2d 98, 101 (1985). Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it. *St. Paul Ins.* v. *Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

In the present case, the insurer contends that the language of both the employee exclusion and the motor vehicle exclusion is "clear, concise and unambiguous," and that the trial court erred in ruling to the contrary. The insurer argues that these "very common exclusions" are "manifestly" for the purpose of excluding farm employees who should be covered under Virginia's Workers' Compensation Act, and for excluding coverage under an automobile policy, where such coverages would be available. According to the insurer: "Both the wording and intent of each of these two exclusions is patent and draws upon well established principles of excluding coverage where other more appropriate coverage should apply."

Continuing, the insurer says that if the policies do not contain an ambiguity favorable to the plaintiff, then the applicability of the exclusions becomes a factual matter, that is, do the facts of the case fit under the terms of the exclusions. Thus, according to the insurer, the issue on appeal should be whether the insurer has shown as a matter of law either that the plaintiff was an employee

of the insured farmers or that Parker's vehicle was loaned to the insured farmers.

Addressing the employee exclusion, the insurer contends that we should refer to the workers' compensation statutes for the definition of the term "employee," and that this plaintiff fits that definition. Using a workers' compensation analysis, the insurer concedes that "the employment of the plaintiff in this case was neither permanent nor regular but more in the nature of occasional." Nevertheless, the insurer says, plaintiff was engaged in the regular course of his employer's business when injured and thus was an "employee" within the meaning of the workers' compensation statutes. The insurer relies on *Board of Supervisors* v. *Boaz*, 176 Va. 126, 10 S.E.2d 498 (1940) (carpenter injured while repairing courthouse windows not entitled to workers' compensation because, although "casual employee," employment not in usual course of employer's business), and *Hoffer Bros.* v. *Smith*, 148 Va. 220, 138 S.E. 474 (1927) (laborer employed as "extra" to handle furniture injured after only few hours of work held not to be casual employee but entitled to workers' compensation because employment by retail furniture company was in usual course of employer's trade, business, or occupation). Consequently, the insurer contends, the plaintiff was hired and paid to harvest hay which was in the usual course of business of the insured farmers and, the exclusion applies because the plaintiff was an "employee" within the meaning of the policy term. We do not agree.

We decline the invitation to embark on a workers' compensation analysis to construe the term "farm employee" as it is used in the exclusion. *Cf. United Services Auto. Ass'n* v. *Pinkard*, 356 F.2d 35 (4th Cir. 1966) (workers' compensation rationale used in automobile liability coverage question where employee exclusion specifically precluded coverage for injury arising out of employment "if benefits thereof are in whole or in part either payable or required to be provided under any worker's compensation law"). While it may be true that the purpose of the exclusion is keyed to compensation statutes, unlike *Pinkard* the exclusion makes no specific reference to such a link. Instead, we will examine the words in light of their usual and customary meaning to determine whether they are clear or ambiguous, and apply the foregoing settled principles to that threshold determination.

The policies in question define "farm employee" as "an employee of any Insured whose duties are principally in connection

with the farming operations of the Insured. . . ." Thus, the key word in both the exclusion and the definition is "employee." But the policy does not define the general term "employee." So when we examine the exclusion and the associated definition, as well as the face of the policy as a whole, we conclude, like the trial court, that the term "employee" is ambiguous.

■ The generally accepted meaning of the word connotes continuous service of a person who works full time for another for a consideration. Admittedly, the term could mean a person who engages in occasional, casual, or incidental work, with or without remuneration. But this demonstrates that the term is ambiguous because it can be understood in more than one way and refers to two or more concepts at the same time. Accordingly, we will interpret the doubtful language to grant coverage, holding that the plaintiff was not a regular, continuous worker; hence not an "employee."

The facts show, as the insurer properly has recognized, that the plaintiff's employment was merely occasional. He had "helped" his grandfather at other times without pay. He was not a permanent worker on the farmers' payroll. In fact, he was enlisted by the young friend on the day of the accident to "get up the hay" in order to "earn some extra money." Consequently, the employee exclusion is not applicable. *See Savoie* v. *Fireman's Fund Ins. Co.*, 347 So.2d 188 (La. 1977) (in action against insurer arising from death of minor who fell from tractor in farm accident, held that tractor operator, a neighbor and friend of insured farmer, was not "farm employee" within meaning of liability provisions of farmers comprehensive liability policy). *See also* Annot. 48 A.L.R.3d 13, 34-39.

Addressing the motor vehicle exclusion and insisting that its language is clear, the insurer argues that the farmers controlled and supervised operation of the Parker vehicle "in which case the vehicle was a loaned vehicle and coverage is excluded" under the terms of the policy. We do not agree.

■ As the trial court ruled, the language of that exclusion likewise is ambiguous. The term "loaned," nowhere defined in the policy, is susceptible to different interpretations. On the one hand, the term may connote a formal bailment. *See K-B Corp.* v. *Gallagher*, 218 Va. 381, 384, 237 S.E.2d 183, 185 (1977) (bailment broadly defined as legitimate possession of property by one who is not the owner arising from a delivery of the chattel by the bailor

and its acceptance by the bailee). On the other hand, the term may imply a loose, informal arrangement, as here, where a volunteer has offered the use of his truck as a friendly gesture for a specific purpose, never relinquishing possession or control over the vehicle.

But, applying the foregoing rule of construction, we will adopt the interpretation which grants coverage. Thus, we construe "loaned" to mean a formal bailment, which the insurer has failed to prove. Therefore, the motor vehicle exclusion is inapplicable.

For these reasons, we conclude that the trial court correctly decided that the claims asserted as the result of the plaintiff's injury are covered by the policies in question. Therefore, the declaratory judgment below will be

*Affirmed.*