On Application for Rehearing
The opinion of June 16, 1995, is withdrawn and the following is substituted therefor.
Charles Zitterow appeals from a summary judgment for Nationwide Mutual Insurance Company in Zitterow's action alleging breach of contract, misrepresentation, fraudulent suppression, and deceit. Nationwide issued a policy of automobile insurance to Zitterow, a Virginia resident. The policy was in effect when Zitterow was injured in Alabama by a vehicle operated by Truman Ball, an uninsured motorist. It is undisputed that Virginia law applies in interpreting this policy. Gravley v. Nationwide Mutual Ins. Co., 553 So.2d 52
(Ala. 1989).
Zitterow contends that the policy provided uninsured motorist coverage of up to $100,000 for his injury. Although Nationwide disputed Zitterow's right to any uninsured motorist coverage, it paid into court $25,000, which Nationwide contended was the maximum amount that Zitterow would be entitled to for any injury to one person by an uninsured motorist. Nationwide moved for a summary judgment on the basis that under the terms of the policy, as interpreted by Virginia law, Zitterow was not entitled to "stack" uninsured motorist coverage and that Zitterow had failed to present substantial evidence of any misrepresentation, fraudulent suppression, or deceit by Nationwide.
It is undisputed that in the usual course of business, after issuing the policy, Nationwide followed its procedures and sent the policy, and every six months sent the "Family Automobile Policy Declarations," by first class mail to Zitterow at his correct address.
The declarations provided:
 "These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your policy provides coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated. Your policy complies with the motorists' financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.
"INSURED VEHICLE(S) AND
"SCHEDULE OF COVERAGES
 "VEHICLE COVERAGES AND LIMITS OF LIABILITY "1 1989 FORD RANGER ID # "1A COMPREHENSIVE ACTUAL CASH VALUE LESS $ 100 "2A PERSONAL EFFECTS $ 100 "B COLLISION ACTUAL CASH VALUE LESS $250 "D PROPERTY DAMAGE LIABILITY $25,000 EACH OCCURRENCE "E BODILY INJURY LIABILITY $25,000 EACH PERSON $50.000 EACH OCCURRENCE "UNINSURED MOTORISTS ENDORSEMENT 1297D 1195E "-BODILY INJURY $25,000 EACH PERSON $50,000 EACH ACCIDENT "-PROPERTY DAMAGE $25.000 EACH ACCIDENT
". . . .
 "2 1983 FORD PICKUP ID# "D PROPERTY DAMAGE LIABILITY § 25,000 EACH OCCURRENCE "E BODILY INJURY LIABILITY $25,000 EACH PERSON $50,000 EACH OCCURRENCE "UNINSURED MOTORISTS ENDORSEMENT 1297D 1195E "-BODILY INJURY $25,000 EACH PERSON $50,000 EACH ACCIDENT "-PROPERTY DAMAGE $25,000 EACH ACCIDENT"
Zitterow does not dispute that Nationwide mailed, by first class mail, the policy and endorsements to him at his correct address, nor does he dispute that every six months it mailed, by first class mail, the above declarations notice. Rather, Zitterow contends that he never received a copy of the policy or the declarations until after the accident made the basis of this action. According to Zitterow, the only notice he received by first class mail from Nationwide before the accident was what Nationwide refers to as a "Billing Notice," which sets out the uninsured motorist coverage as follows: *Page 111 
"COVERAGE *See policy VEH MAKE YEAR VEH MAKE YEAR "for limits and deductible. 1 FORD 89 2 FORD 83 ---------------------------------- "LIMITS PREMIUM LIMITS PREMIUM
". . . .
"UNINSURED MOTORIST — 25,000 10.00 25,000 9.00 "BI — 50,000 50,000 "PD — 25,000 25,000"
 Zitterow contends that this billing notice represented that the policy provided $50,000 in uninsured motorist coverage for bodily injury (BI), for each insured vehicle, for an aggregate amount of coverage of $100,000 by stacking the available coverage. Therefore, Zitterow says, he made demand on Nationwide for $100,000, the policy limits for uninsured motorist coverage.
The policy provides:
"III. LIMITS OF LIABILITY
 "Regardless of the number of (1) persons or organizations who are Insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) motor vehicles to which this insurance applies:
 "(a) If the Schedule or Declarations indicates split limits of liability, the limit of liability for bodily injury stated as applicable to 'each person' is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting 'each person' the limit of liability for bodily injury stated as applicable to 'each accident,' is the total limit of the Company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."
In Goodville Mutual Casualty Co. v. Borror, 221 Va. 967,275 S.E.2d 625, 627 (1981), the Supreme Court of Virginia held that stacking of uninsured motorist coverage would be permitted unless "clear and unambiguous language exists on the face of the policy to prevent such multiple coverage. . . . [A]ny ambiguity contained within a policy will be construed against the insurer." The Supreme Court of Virginia held that the "Limits of Liability" provision in Goodville Mutual, which is virtually identical to the "Limits of Liability" provision in the policy in this case, clearly and unambiguously prohibited stacking of uninsured motorist benefits.
 "We conclude that the language of Goodville's policy, viz., 'regardless of the number of . . . motor vehicles to which this insurance applies,' is clear and unambiguous and requires the construction that stacking is not permissible. With the foregoing language, the policy plainly limits Goodville's UM liability for damages to any one person as a result of any one accident to $25,000. The mere fact that two vehicles are insured and two separate premiums are charged is of no consequence in light of the express language of the policy."
221 Va. at 971, 275 S.E.2d at 628.
While acknowledging the holding in Goodville Mutual, Zitterow nonetheless maintains that because the only notices he received from Nationwide — the billing notices — did not contain the above-referenced exclusionary language and because those billing notices were ambiguous as to the amount of bodily injury coverage available, a fact question exists as to the interpretation of the true coverage afforded by the contract and as to the availability of stacking uninsured motorist coverage.
Nationwide contends that the billing notice was not meant to be construed as the insurance policy. Rather, it argues, because the billing notice states in bold type "See policy for limits and deductible," the notice clearly *Page 112 
and unambiguously provides that the details concerning limits and deductibility information are located in the policy.
Although Zitterow concedes that the billing notice is not the policy, he argues that the billing notice is part of the policy — that while the billing notice tells the insured to "See policy for limits and deductible," nothing on the billing notice indicates that it is not a part of the policy. Thus, according to Zitterow, a "fair minded person in the exercise of impartial judgment" could clearly interpret the billing notice as providing bodily injury protection of $50,000, and Zitterow argues that stacking is available. Zitterow further maintains that even if he had received the policy, the coverage as indicated in the billing notice is "contradictory to the exclusion Nationwide claims exists in the policy booklet [and] may also be interpreted in more than one way." Thus, he says, an ambiguity exists as to the limits of liability and the availability of stacking.
Like Alabama law, Virginia law holds that contractual ambiguities in insurance policies must be construed against the insurer and in favor of the insured. Cuna Mutual InsuranceSociety v. Norman, 237 Va. 33, 375 S.E.2d 724 (1989). "[L]anguage is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." American Reliance Insurance Co. v. Mitchell, 238 Va. 543,547, 385 S.E.2d 583, 585 (1989).
We can find nothing ambiguous in Zitterow's policy concerning the maximum amount of uninsured motorist coverage that Nationwide agreed to provide for bodily injury. The policy specifically provides that $25,000 is the maximum amount to which Zitterow is entitled; stacking is expressly prohibited. Although we agree with Zitterow that the billing notice itself is ambiguous and misleading (i.e., it gives the false impression that the policy provides $50,000 in uninsured motorist coverage for bodily injury), we cannot conclude that that notice created an ambiguity in the policy, so as to allow a factfinder to consider whether Zitterow actually contracted for $50,000 in uninsured motorist coverage for bodily injury. Nationwide's purpose in sending the billing notice to Zitterow was to collect a premium; there is no indication that the notice was intended to form a part of the policy itself. There is also no indication that the parties otherwise understood or mutually consented for the billing notice to modify the terms of the policy. See Kinmon v. J.P. King Auction Co., 290 Ala. 323,325, 276 So.2d 569, 570 (1973) ("[c]ontracting parties are free to modify their contract by mutual assent.") To the contrary, the billing notice specifically directed Zitterow to consult the policy "for limits and deductible." The policy clearly sets out the terms and provisions that formed the agreement between Zitterow and Nationwide. See, also, Franz v.Nationwide Mutual Ins. Co., 1993 WL 199294 [CA 93-02-012, June 14, 1993] (Ohio App.) (unpublished). Furthermore, we can find no basis in fact (there is no evidence that Nationwide attempted to conceal the terms of the policy from Zitterow — the undisputed evidence indicates that the policy was mailed to, although perhaps not received by, Zitterow) or in law for concluding that Nationwide should be estopped from relying on the unambiguous terms of the policy. See McGee v. Guardian LifeIns. Co., 472 So.2d 993, 996 (Ala. 1985), wherein this Court, quoting Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45,50-51 (Ala. 1980), noted that " 'coverage under an insurance policy cannot be created or enlarged by . . . estoppel' " and that " 'if there is no ambiguity, it is the duty of the court to enforce the policy as written.' " The summary judgment was proper with respect to the claim alleging breach of contract.
Zitterow does not allege that Nationwide or any of its agents made any oral misrepresentations, nor did he present any evidence as to the negotiations between the parties as to the terms of the contract. Rather, Zitterow maintains that in the billing notice he received every six months Nationwide made misrepresentations concerning the amount of uninsured motorist coverage and the availability of stacking; he says this billing notice did not contain limiting or exclusionary language, as Nationwide argues. According to Zitterow, the billing notice clearly and unambiguously stated that he had $50,000 in uninsured motorist coverage for bodily injury, for *Page 113 
each separate vehicle, with an aggregate of $100,000 by stacking the available coverage.
Nationwide maintains that if the billing notice could somehow constitute a false representation concerning the coverage provided in the policy, then Zitterow's reliance on such a representation was unjustified, as a matter of law, because the terms of the policy specifically negate his claim that he is entitled to stack coverage. It argues that the billing notice, which included abbreviated terms that are more fully set forth in the policy, clearly and unambiguously referred him to the policy for precise information on the limits and deductibles.
We view the evidence in the light most favorable to Zitterow, as required under the applicable standard of review. Because Zitterow did not receive a copy of the policy and endorsements or the declarations page, we hold that Zitterow presented sufficient evidence to create a fact question with respect to his claim alleging a misrepresentation in Nationwide's billing notice, a misrepresentation that he had $50,000 in uninsured motorist coverage for bodily injury. The trial court erred in entering a summary judgment for Nationwide on that claim. However, as to Zitterow's allegation that Nationwide misrepresented in the billing notice that stacking was available under the policy, we note that nothing in the billing notice pertains to stacking. Virginia law allows stacking unless the policy clearly prohibits it. As noted, the policy here specifically prohibited it. The summary judgment with respect to this aspect of Zitterow's fraud claim was proper.
We note Zitterow's argument that if the Court holds that the anti-stacking language of the Nationwide policy prevents him from stacking uninsured motorist coverage, despite the fact that he did not receive a copy of the policy regarding such prohibitions, he "is still entitled to stack uninsured motorist coverage as the favored law and public policy of Alabama," pursuant to Ala. Code 1975, § 32-7-23. He argues that § 19 of the Nationwide policy incorporates the Alabama Motor Vehicle Safety Responsibility Act, specifically § 32-7-23, into the policy. We find that argument to be without merit.
In general, § 19 of the Nationwide policy states that if under the Alabama Motor Vehicle Safety Responsibility Act a nonresident is required to maintain insurance to operate a vehicle in Alabama and "such insurance requirements are greater than the insurance provided in the policy," then the coverage afforded by the policy shall be as set forth in that law. The language of § 19 of the policy is inapplicable, because Alabama is a non-compulsory insurance state. Neither a resident nor a nonresident is required to have insurance to obtain a driver's license, to secure a vehicle registration, or to travel through this state. Best v. Auto-Owners Ins. Co., 540 So.2d 1381 (Ala. 1989). The Alabama legislature has merely mandated that an uninsured motorist coverage option be available in every automobile policy issued in Alabama, but that coverage may be rejected by the insured. § 32-7-23. Another reason Section 19 is inapplicable is that Zitterow's Nationwide policy provides uninsured motorist coverage, which is not required in Alabama.
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, SHORES, COOK, and BUTTS, JJ., concur.