Titan Indemnity Company ("Titan") appeals from a judgment entered in favor of John Thomas Riley, Jr., and others in a declaratory judgment action commenced by Titan to determine its liability under an insurance policy it had issued to the City of Montgomery. We affirm.
This is the second time we have addressed issues in this action. See Titan Indemnity Co. v. Riley ("Titan I"),641 So.2d 766 (Ala. 1994). Titan I, which was released on February 25, 1994, set forth the following:
 "The City of Montgomery (hereinafter 'the City') and Titan Indemnity Company (hereinafter 'Titan') brought a declaratory action seeking a determination of whether, pursuant to an insurance policy between Titan and the City, Titan was obligated to defend and indemnify Frank Bertarelli, B.H.H. Davis, Jerome M. Wooten, and Michael G. Jones, four of the City's police officers, in regard to federal charges of malicious prosecution and civil rights violations. The trial court entered a judgment holding that Titan was contractually bound to defend the police officers, but did not rule on the issue of indemnity; the court certified the judgment as final under Rule 54(b), A.R.Civ.P. Titan and the City appeal.
 "The dispositive issue before us is whether the trial court properly determined that Titan must defend officers Bertarelli and Wooten against the federal charges. We note these facts from the record: In 1991, a series of federal habeas corpus hearings revealed that the Narcotics Division of the Montgomery Police Department had engaged in a pattern of corrupt practices, including the misappropriation of that Division's 'informant fund,' i.e., money set aside to pay informants who provided the police with information regarding illegal drug activity. Police officers who withdrew cash from this fund were required to report the amount withdrawn, the informant to whom it was paid, and the information that was received in return for the payment. The hearings revealed that Bertarelli, Davis, Wooten, and Jones repeatedly withdrew money from the fund, pocketed it for themselves, and then falsified the files to show that they had paid the money to informants.
 "In 1989, those four police officers withdrew money from the informant fund and then falsely reported that they had spent it on 'information' from 'anonymous persons' regarding the alleged illegal drug activities of John Thomas Riley, Jr. Based on this fabricated 'information' from these fictitious informants, the four policemen conducted an unconstitutional search of Riley's person and his automobile and filed criminal complaints against him without probable cause. They also 'planted' false evidence in Riley's vehicle and supported Riley's criminal prosecution with false testimony. As a result, Riley was convicted on two counts of possession of crack cocaine with intent to distribute and on one count of carrying a firearm during a drug transaction. He served approximately three years of a 123-month sentence, first in the Montgomery County jail and then in the federal penitentiary in Oakdale, Louisiana, until his repeated habeas corpus proceedings ultimately exposed the unconstitutionality of his arrest and prosecution.
 "The United States District Court for the Middle District of Alabama vacated the judgments of conviction against Riley and ordered his release from prison, and the United States attorney dropped all claims against him. Riley then sued the four police officers, along with their supervisors (John Wilson, chief of the Montgomery Police Department and Dennis Bodine, commander of the Narcotics Division of the Montgomery Police Department) and the City [and its mayor, Emory Folmar], alleging malicious prosecution and violations of his civil rights and seeking damages under 42 U.S.C. § 1983. Riley alleged that his arrest and convictions occurred as a result of an intentional pattern *Page 703 
of corruption within the Narcotics Division of the Montgomery Police Department, perpetuated by the four police officers and tacitly authorized by their supervisors and the City."
641 So.2d at 767 (emphasis added, footnote omitted).
In Titan I, Titan argued that it was not bound to defend the officers, because, it contended, "the acts of corruption that caused Riley's unlawful incarceration were not 'occurrences' that resulted from law enforcement activities and that caused 'personal injury that the insured did not expect or intend.' "Id. at 768. It insisted that "the acts were intentional wrongs that cannot give rise to a duty to defend under the policy."Id. Titan also argued for a reversal of the summary judgment on the ground that "the actions alleged in the complaint did not arise from law enforcement activities within the scope of the .. . officers' duties for the City of Montgomery." Brief ofAppellee John Thomas Riley, Jr., App. B., at 6 (emphasis added).
In deciding whether Titan was obligated to defend the officers, this Court set forth and construed the following provisions of the Titan insurance policy:
" 'PART 1 — WORDS AND PHRASES WITH SPECIAL MEANING
" '. . . .
 " 'E. "Occurrence" means an event and includes continuous or repeated exposure to the same condition that results in:
 " '1. personal injury the insured did not expect or intend unless the personal injury resulted from the use of reasonable force to protect persons or property.
" '. . . .
" 'F. "Personal injury" means:
 " '1. Bodily injury. Any physical harm to a person's health including sickness or disease. This includes mental harm, mental anguish or mental illness whether or not there has been physical harm or illness.
 " '2. False arrest, wrongful detention or imprisonment.
" '3. Malicious prosecution.
" '. . . .
" '6. Humiliation.
" '. . . .
" '10. Violation of civil rights.
" '. . . .
" 'PART III — WHAT THIS AGREEMENT COVERS
" 'A. WE WILL PAY.
 " '1. We will pay all sums the insured legally must pay as damages because of personal injury or property damage to which this insurance applies, caused by an occurrence resulting from law enforcement activities. . . .
 " '2. We have the right and duty to defend any claim, suit, or action asking for these damages even if it is groundless or fraudulent. This includes but is not limited to inquests and civil or criminal suits brought under the Federal Civil Rights Act.' "
Id. at 768 (emphasis added in Titan I).[1]
This Court affirmed the judgment, holding that the policy provided coverage for the acts forming the basis of Riley's § 1983 action in the federal courts. Specifically, we explained:
 "The language of the policy does preclude coverage for intentional acts, but it also specifically provides coverage for acts of malicious prosecution, assault and battery, wrongful entry, piracy, and other offenses that require proof of intent. Further, the policy specifically provides coverage for claims brought under the Federal Civil Rights Act. The conflict between these provisions creates an inherent ambiguity within the policy, and it is well settled in this state that when there is any doubt as to whether insurance *Page 704 coverage exists under a policy, the policy must be construed for the benefit of the insured. Guaranty National Insurance Co. v. Marshall County Board of Education, 540 So.2d 745 (Ala. 1989). Because the policy is ambiguous on its face, we construe it against Titan and conclude that Titan must defend the defendants on the claims against them."
641 So.2d at 768 (emphasis added).
After Titan I was released, the United States District Court for the Middle District of Alabama entered a judgment in favor of Bertarelli, Davis, Jones, and Wooten as to the § 1983 claims, and in favor of Bertarelli, Davis, and Jones as to Riley's state-law claims. It denied Wooten's summary judgment motion as to the state-law claims. Subsequently, the court entered a judgment in favor of the City of Montgomery, Bodine, Mayor Folmar, and Chief Wilson as to all claims against them. From those judgments, which were certified as final judgments pursuant to Fed.R.Civ.P. 54(b), Riley appealed to the United States Court of Appeals for the Eleventh Circuit. (So far as the record here indicates, that appeal is still pending in that court.) Wooten sought "permission to take an interlocutory appeal" of the denial of his summary judgment motion, but the Eleventh Circuit denied it.
Meanwhile, on July 27, 1994, the Montgomery County Circuit Court entered an order in the declaratory action, holding that the policy issued by Titan requires it to indemnify the defendants Bertarelli, Davis, Wooten, and Jones if Riley's action against them in the federal courts is ultimately successful. The order stated in pertinent part:
 "This court is not called upon to rule on the underlying merits of the claims brought by plaintiff John Thomas Riley, Jr. against all other parties under the Federal Civil Rights Act, but simply answer the very narrow questions of whether there should be indemnification under the policy of insurance issued by Titan Indemnity Company in the event that the plaintiff . . . is successful in his suit. . . .
 "The policy of insurance in question does preclude coverage for intentional acts, but includes coverage for claims brought under the Civil Rights Act and for malicious prosecution.[2] Therefore, the court concludes that the answer to the question that has been presented must be answered affirmatively."
That order was certified as a final judgment pursuant to Ala.R.Civ.P. 54(b), and Titan appealed.
Titan bases its arguments for reversal of this judgment on two grounds. First, it contends that the defendant police officers are not "insureds" within the meaning of that term in the policy, because, it insists, "the acts of the defendant officers as alleged in the federal complaint did not arise from law enforcement activities within the scope of the officers' duties for the City of Montgomery." Riley, however, arguing foraffirmance of the judgment, insists that the dispositive question of Titan's duty to its insureds under the policy was determined adversely to it in Titan I, and that Titan I, therefore, establishes the law of this case.
Second, Titan contends that "the trial court should have deferred a final ruling until the adjudication of the underlying federal lawsuit." Indeed, after the briefs were filed in this case, Titan moved this Court to "stay the appeal of this action until the final resolution of the underlying federal action." That motion is still before us.
Third, it argues that regardless of the conclusions reached by this Court in Titan I, and regardless of the outcome of the federal action, "a contractual obligation to indemnify an insured for intentional wrongs is void as against the public policy of the State of Alabama." We shall address Titan's first two arguments in Part I and shall address the final argument in Part II.
 I. Law of the Case
"An interlocutory appeal may settle a particular issue of the proceedings, so that the decision becomes the law of the case for the pendency of the litigation." Parsons Steel, Inc. v.Beasley, 600 So.2d 248, 252 *Page 705 
(Ala. 1992). Regarding this principle, this Court has given the following explanations: From Blumberg v. Touche Ross Co.,514 So.2d 922, 924 (Ala. 1987):
 "Under the doctrine of the 'law of the case,' whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case."
From Gray v. Reynolds, 553 So.2d 79, 81 (Ala. 1989):
 "It is well established that on remand the issues decided by an appellate court become the 'law of the case,' and that the trial court must comply with the appellate court's mandate. Walker v. Carolina Mills Lumber Co., 441 So.2d 980
(Ala.Civ.App. 1983). See also Erbe v. Eady, 447 So.2d 778 (Ala.Civ.App. 1984). The trial court's duty is to comply with the mandate 'according to its true intent and meaning,' as determined by the directions given by the reviewing court. Ex parte Alabama Power Co., 431 So.2d 151 (Ala. 1983)."
Titan insists that Titan I is not the law of this case, because, it argues, we are here presented with an issue not addressed or confronted in Titan I, namely, whether the defendant officers are "insureds" within the meaning of the policy language. Specifically, it argues:
 "The Titan policy expressly requires that the matters for which coverage is sought must result from law enforcement activities, and that no person claiming coverage is an insured unless the acts complained of are 'acts within the scope of their duties for' the City of Montgomery. The allegations made against the Defendant officers in no way can be construed to be in the furtherance of law enforcement activities or within the scope of their duties for the City."
Brief of Appellant, at 58 ("Insured" emphasized in the original; other emphasis added.) Similarly, it contends, the judgment under review in Titan I held only that Titan was obligated to defend the officers, not, as was held by the judgment under review here, that it is obligated to indemnify
them.
We are unpersuaded by these arguments — they are essentially restatements of the ones Titan relied on in the previous appeal. There, we concluded that "the acts of corruption that caused Riley's unlawful incarceration were . . . 'occurrences' that resulted from law enforcement activities" within the meaning of the terms used in the policy. 641 So.2d at 768. Indeed, the only legal basis for the holding that Titan was obligated to defend the officers was that the conduct committed
by the officers was conduct covered under the policy.
Given our conclusion in that case, it would be inconsistent for us to hold in this case, that the officers, who committedthe conduct, were not covered. Otherwise stated, if the conduct giving rise to this dispute was covered as to Titan's duty to defend, that same conduct also provides the basis for imposing on Titan a duty to indemnify. We conclude, therefore, thatTitan I establishes the law of this case as to Titan's liability for indemnification under the policy.
As to the motion to stay this appeal, the effect of Titan I
on this present case does not turn on the outcome of the collateral federal action. Any decision the federal courts might eventually reach as to whether the defendants are liable to Riley will not moot the question previously decided in TitanI regarding the applicability of an insurance policy. Moreover, regardless of the outcome of the appeal in the Eleventh Circuit, the action against the defendant Wooten is,apparently, proceeding apace in the federal district court. For these reasons, Titan's motion to stay the appeal is denied.
 II. Public Policy
In support of the proposition that Alabama law and public policy prohibit indemnity under these facts, Titan citesArmstrong v. Security Insurance Group, 292 Ala. 27,288 So.2d 134 (1973), Pruet v. Dugger-Holmes Associates, 276 Ala. 403,162 So.2d 613 (1964); Fidelity-Phenix Fire Insurance Co. v.Murphy, 226 Ala. 226, 146 So. 387 (1933). To be sure, this Court stated in Murphy: *Page 706 
 "There can be no valid insurance coverage which will protect or indemnify the insured or indemnitee against a loss which he may purposely and willfully create, or which may arise from his immoral, fraudulent, or felonious conduct. Such an express contract of insurance or indemnity is void as against public policy."
226 Ala. at 230-31, 146 So. at 390. Armstrong and Pruet also refer to this rule.
Those cases, however, are not controlling. Pruet did not involve an insurance policy; Armstrong involved an insurance policy, but one that expressly and clearly excluded coverage for intentional conduct; and Murphy involved a "first-party" insurance contract, that is, a policy providing for the payment of proceeds to the insured. More specifically, Murphy involved allegations that the insured, who owned a ship, had conspired "with others . . . to sink and . . . destroy the vessel and cargo for the purpose of collecting the insurance upon the ship and also for the purpose of defrauding [the insurer] in causing it to repay [the insured] any sum paid by him to the owner of the cargo." 226 Ala. at 229, 146 So. at 388. In short, Titan has not cited a case in which this Court has held that an insurer who, as in this case, agrees — in exchange for receipt of premiums — to pay for the harm or loss suffered by a third party arising out of the intentional acts of its insured, may, nevertheless, avoid the contract on the ground of public policy.
In fact, at least one recent case suggests the contrary result. In Burnham Shoes, Inc. v. West American Insurance Co.,504 So.2d 238 (Ala. 1987), this Court expressly pretermitted discussion of "the correctness of the Fifth Circuit's conclusion [in St. Paul Ins. Cos. v. Talladega Nursing Home,606 F.2d 631 (5th Cir. 1979)] that insurance contracts in which the insurer agrees to indemnify its insured for intentional acts violate the public policy of this state." 504 So.2d at 241 n. 1 (emphasis in original).
In Burnham Shoes, the Court of Appeals for the Eleventh Circuit certified to this Court the question: "Is an insurance provision, which otherwise would obligate the insurer to defend the insured in a lawsuit based upon intentional wrongs alleged to have been committed by the insured, void as against the public policy of the state of Alabama?" Id. at 238. Significantly, we answered that question in the negative, and, although we declined to address the public policy implications of enforcing indemnity provisions, we found no public policy impediment to enforcement of provisions requiring an insurer todefend its insured. Id. at 241. We said:
 "[W]e fail to perceive how requiring an insurer to meet its contractual obligation to provide a defense to claims alleging intentional acts violates the public policy of this state. Indeed, where the insurance contract in question expressly
provides for such coverage (and the insurer has collected a premium therefor), we see no reason whatsoever to allow the insurer, on public policy grounds, to avoid these provisions in its own contract, which would otherwise obligate it to defend."
Id. (Emphasis in original.)
For these and other reasons, a number of courts have expressly held that policy provisions requiring the insurer to pay damages for injuries arising out of the intentional acts of its insured are enforceable. See, e.g., New Madrid CountyReorganized School Dist. No. 1, Enlarged v. Continental Cas.Co., 904 F.2d 1236, 1242 (8th Cir. 1990) ("Missouri public policy [does not prohibit] insurance coverage for an insured's intentional acts where the policy provides for such coverage");Everglades Marina, Inc. v. American Eastern Dev. Corp.,374 So.2d 517 (Fla. 1979) (Florida public policy permitted enforcement of an insurance contract requiring insurer to compensate boat owners for damage to boats stored in a marina, which was intentionally burned by the insured); American HomeAssurance Co. v. Fish, 122 N.H. 711, 451 A.2d 358, 360 (1982) (New Hampshire "public policy sanctions rather than opposes insuring for liability arising directly against the insured from intentional torts such as false arrest, slander or [violations leading to] § 1983 actions"); Colson v. Lloyd's ofLondon, 435 S.W.2d 42, 47 (Mo.App. 1968) (it is not "against [Missouri] public policy to permit an association of law enforcement officers to insure themselves *Page 707 
against alleged wilful and intentional acts"); accord, City ofNewark v. Hartford Accident Indem. Co., 134 N.J. Super. 537,342 A.2d 513, 518 (1975) (New Jersey public policy does not prohibit the enforcement of provisions requiring an insurer "to defend municipal policemen and pay for damages awarded against them in an action for intentional acts described in the policy," where the acts are not criminal and are not committed with "actual malice or other outrageous conduct"). We hold, therefore, that Alabama public policy does not prohibit the enforcement of a contract in which an insurer agrees to pay for injuries suffered by third parties as the result of intentional acts of the insured.
In summary, based on the holding of Titan I, we conclude that the trial court properly entered the judgment in favor of Riley and the four police officer defendants. That judgment is, therefore, affirmed.
MOTION TO STAY DENIED; AFFIRMED.
ALMON, SHORES, HOUSTON, KENNEDY, and INGRAM, JJ., concur.
HOOPER, C.J., and MADDOX and BUTTS, JJ., dissent.
[1] In addition to these provisions, the policy provided:
"D. WHO IS INSURED.
 "Each of the following is an insured, but only for acts within the scope of their duties for you:
". . . .
 "3. All law enforcement officers of the law enforcement agency."
(Emphasis added.)
[2] This language, of course, essentially mirrors the language ofTitan I, 641 So.2d at 768.