The United States Court of Appeals for the Eleventh Circuit has certified to this Court, pursuant to Ala. R.App. P. 18, the following question:
 "Does an insurance policy provision limiting an `insured' to an employee acting `within the scope of duties' while conducting the business of the employer conflict with a separate provision in the same insurance policy providing coverage for `violations of constitutional/civil rights' so as to create an ambiguity that must be construed against the insurer?"
Employers Mut. Cas. Co. v. Mallard, 309 F.3d 1305, 1311 (11th Cir. 2002). We answer this question in the negative.
In its opinion certifying this question, the Eleventh Circuit Court of Appeals set forth the following background facts:
"A. Underlying [42 U.S.C.] § 1983 Actions *Page 1028 
 "In February 2000, [Janice] Shrader filed a complaint against the City of Attalla, Fletcher Mallard, a city police officer, and Barnie Gilliland, a part-time bailiff at the city jail. Shrader's complaint alleges that Mallard and Gilliland sexually abused her after her arrest for driving under the influence, driving with a suspended or revoked license, and reckless driving on April 7, 1999. Shrader's complaint asserts claims for violation of her constitutional rights pursuant to 42 U.S.C. § 1983 and for negligence, wantonness, and civil conspiracy.
 "In July 2000, [Debra Lynn Minnix] Livingston filed a similar complaint against the City of Attalla, Mallard, and Gilliland, alleging that Mallard and Gilliland sexually abused her after she was arrested for driving under the influence, reckless driving, and resisting arrest on August 9, 1998. Livingston's complaint asserts claims for violation of her constitutional rights pursuant to 42 U.S.C. § 1983
and for civil conspiracy against Mallard and Gilliland.¹
 "On March 12, 2001, the district court granted summary judgment in favor of the City of Attalla in Shrader's case. On April 20, 2001, the district court likewise granted summary judgment in favor of the City of Attalla in Livingston's case. Neither Shrader nor Livingston appealed the entry of summary judgment in favor of the City. Both cases remained pending against Mallard and Gilliland.
 "Shrader and Livingston subsequently settled their claims against Mallard and Gilliland. On April 27, 2001, the district court entered identical orders in both cases, dismissing each case without prejudice and allowing any party to reopen the case within thirty days or to submit a stipulated form of final judgment. The district court's order also reserved jurisdiction for thirty days for the filing of motions to enforce the settlements. No such motions were filed in either case.
 "B. [Employers Mutual Casualty Company's] Insurance Policies and Declaratory Judgment Action
 "[Employers Mutual Casualty Company (`EMCC')] issued a commercial general liability policy (`CGL'), as well as a linebacker policy, to the City of Attalla.² Shrader and Livingston conceded that neither of the CGL policies provides coverage for their claims and stipulated that their claims for coverage are limited to the linebacker policies.
 "On April 27, 2001, EMCC filed a declaratory judgment action in the district court seeking a declaration that the linebacker policy did not cover Shrader's and Livingston's claims against Mallard and Gilliland. On January 11, 2002, the district court granted summary judgment in favor of EMCC, holding that the linebacker policy was `unambiguous' and did not provide coverage to Mallard and Gilliland for their sexual abuse of Shrader and Livingston. The district court concluded that Mallard and Gilliland's conduct was outside the scope of their duties in conducting the business of the City of Attalla, and, therefore, not covered by the linebacker policy. Shrader and Livingston timely appealed.
"_______________________
 "¹The parties do not dispute that Mallard and Gilliland, while employed by the City of Attalla, sexually abused Shrader and Livingston. According to Shrader, Mallard and Gilliland sodomized and coerced her into performing oral sex on them while she was in jail. Livingston alleges that she was raped by Mallard and that Gilliland touched her all over her body and briefly attempted intercourse. *Page 1029 
 "²Although the facts indicate that EMCC issued two separate CGL policy numbers and two separate linebacker policy numbers to the City of Attalla, the two respective policy numbers refer to the same policy issued in two consecutive years. . . . As to the linebacker policy, policy number 1[N]4-62-00-99 covers from April 3, 1998 to April 3, 1999, and policy number 1[N]4-62-00-00 covers from April 3, 1999 to April 3, 2000."
Mallard, 309 F.3d at 1306-1307.
The linebacker policy provided, in pertinent part:
"PART I — COVERAGE
"A. Agreement
 "We will pay `Loss' and/or `Defense Expenses' to which this insurance applies excess of the deductible stated in the Declarations. . . .
". . . .
"PART II — DEFINITIONS
". . . .
"C. `Insured' means:
". . . .
 "3. Employees of the `organization' while acting within their scope of duties while conducting the business of the `organization.'
". . . .
"D. `Loss' means sums:
 "1. Which an `insured' is legally obligated to pay as compensatory damages . . . because of a wrongful act.
". . . .
"F. `Personal Injury' means:
 "1. Injury, other than `Bodily Injury,' arising out of one or more of the following offenses:
". . . .
 "f. Violations of constitutional/civil rights or improper service of process as it relates solely to the `organization's' law enforcement activities."
The Eleventh Circuit Court of Appeals further stated:
 "Although Part I provides coverage for personal injury, Part III of the linebacker policy then excludes coverage for personal injury claims. But then an endorsement to the linebacker policy deletes the exclusion for personal injury and amends the definition of `Wrongful Act' to include personal injury. The net result is the linebacker policy covers claims for personal injury, which is defined to include civil rights violations.
 "Although providing coverage for civil rights violations, the linebacker policy also limits the definition of `insured' to employees acting within the scope of their duties. . . .
"`. . . .'
 "Shrader and Livingston emphasize that civil rights violations frequently involve conduct outside of the scope of a police officer's duties. Thus, Shrader and Livingston argue that the policy's language providing coverage for `[v]iolation of constitutional/civil rights,' when read together with its definition of `insured' with its limiting `scope of duties' language creates conflict between the provisions and creates an inherent ambiguity within the policy which must be construed for the insured's benefit.
 "Alternatively, Shrader and Livingston argue that limiting coverage for civil rights violations only to those civil rights violations that occur in the scope of an employee's duties would result in illusory coverage. Shrader and Livingston contend that most, if not all, civil rights violations occur outside the scope of an employee's duties. Therefore, according to Shrader and Livingston, denying coverage will result in an exclusion or limitation essentially swallowing up the purported coverage which, under *Page 1030 
Alabama law, violates the doctrine of illusory coverage. See Industrial Chem. Fiberglass Corp. v. Hartford Acc. Indem. Co., 475 So.2d 472, 478-79
(Ala. 1985) (noting that `the law cannot countenance . . . illusory "coverage"' in the context of construing ambiguous policies); see also Titan Indem. Co. v. Newton, 39 F.Supp.2d 1336, 1344-45
(N.D.Ala. 1999) (noting that `Alabama recognizes [the illusory coverage doctrine] that the language or interpretation of an ambiguous provision by an insurance company may be so tortured as to result in "illusory" coverage')."
Mallard, 309 F.3d at 1308-09 (emphasis added; footnote omitted).
Janice Shrader and Debra Lynn Minnix Livingston also argue in this Court, as they did before the Eleventh Circuit Court of Appeals, that this case is controlled by Titan Indemnity Co. v.Riley, 641 So.2d 766 (Ala. 1994) ("Titan I"), and TitanIndemnity Co. v. Riley, 679 So.2d 701 (Ala. 1996) ("TitanII"). More specifically, they insist that in Titan II, this Court "considered and rejected the argument that a scope of duties limitation in the definition of `insured' can limit broader insurance policy provisions providing coverage for violations of constitutional and civil rights." Mallard,309 F.3d at 1311 (emphasis added).
EMCC argues — and the federal district court so held — that Fletcher Mallard and Barnie Gilliland, the Attalla police officers accused of sexually assaulting Shrader and Livingston "are excluded from coverage because the linebacker policy defines an `insured' as `employees of the [City] while acting withintheir scope of duties while conducting the business of the [City]' . . ., and that the act of sexual assault is always outside the scope of a law enforcement officer's duties."309 F.3d at 1309 (footnote omitted). Because the Eleventh Circuit Court of Appeals certified its question primarily for this Court to explain the implications — if any — of Titan I and TitanII for this case, we will begin with the Titan cases.
 I. The Titan Cases
The Titan cases were succinctly summarized by the Eleventh Circuit Court of Appeals as follows:
 "We recognize that [Titan I] and the subsequent case of [Titan II], did involve the interpretation of two insurance clauses similar to those in dispute here. Titan II, 679 So.2d at 705. However, as explained below, the solution to the issue here is not clear from those decisions.
 "The underlying facts in Titan I and Titan II are the same. Titan Indemnity Company brought a declaratory action seeking a determination of whether Titan was obligated to defend (Titan I) and indemnify (Titan II) four City of Montgomery police officers in connection with a 42 U.S.C. § 1983 action based on violation of the plaintiff's constitutional rights. The insurance policy in question covered `Personal Injury,' which the policy defined as, inter alia, `[v]iolation of civil rights,' and limited the definition of `insured' to `[law enforcement officers] . . . but only for acts within the scope of their duties for [the City].' Titan II, 679 So.2d at 703 n. 1 (citing Titan I, 641 So.2d at 768). In Titan I, the Alabama Supreme Court concluded that `the language of the policy d[id] preclude coverage for intentional acts, but it also specifically provide[d] coverage for . . . offenses that require proof of intent . . . [and] specifically provide[d] coverage for claims brought under the Federal Civil Rights Act.' Titan I, 641 So.2d at 768. As a result, the conflict between the provisions created `an inherent ambiguity within the policy.' Id. This conflicting language and resulting *Page 1031 
ambiguity in the policy, when interpreted in favor of the insured, resulted in coverage for the defense of the 42 U.S.C. § 1983 claims against the officers. Id.
 "Titan II followed two years later and concluded that Titan Indemnity Company must also indemnify the employees for any monetary claim paid in settlement of the § 1983 claim. The Alabama Supreme Court [appears to have] rejected the argument, which EMCC makes on appeal here, that a scope-of-duties limitation restricts coverage for constitutional or civil rights violations, stating as follows:
"`Specifically, [Titan Indemnity Company] argues:
 "`"The Titan policy expressly requires that the matters for which coverage is sought must result from law enforcement activities, and that no person claiming coverage is an insured unless the acts complained of are `acts within the scope of their duties for' the City of Montgomery. The allegations made against the Defendant officers in no way can be construed to be in the furtherance of law enforcement activities or within the scope of their duties for the City. . . ."
 "`We are unpersuaded by these arguments — they are essentially restatements of the ones Titan relied on in [Titan I].'
 "Titan II, 679 So.2d at 705 (citing Brief for Titan Indemnity Co. at 58). . . .
 "The basis for [the holding of Titan II], however, is unclear. As EMCC points out, another section of the Titan II opinion appears to indicate that the Alabama Supreme Court rejected [the argument that EMCC makes in this case][1] based only on a law-of-the-case ground. In this regard, the Alabama Supreme Court stated as follows:
 "`Given our conclusion in [Titan I], it would be inconsistent for us to hold in this case, that the officers, who committed the conduct, were not covered. Otherwise stated, if the conduct giving rise to this dispute was covered as to Titan's duty to defend, that same conduct also provides the basis for imposing on Titan a duty to indemnify. We conclude, therefore, that Titan I establishes the law of this case as to Titan's liability for indemnification under the policy.'
 "Titan II, 679 So.2d at 705. Thus, it is unclear in Titan II whether the Alabama Supreme Court rejected Titan Indemnity Company's arguments on the merits, concluding that coverage was required due to the ambiguity in coverage, or whether the court simply was bound by the prior ruling in Titan I. As a result, this Court faces an unsettled issue of Alabama law that is determinative of the issue in this appeal. We, therefore, certify this question for resolution by the Alabama Supreme Court."
Mallard, 309 F.3d at 1310-11 (emphasis in Titan II).
This Court's holding in Titan II was based solely on thelaw of the case, which was established in Titan I. Thus, theTitan cases are not controlling. A brief comparison of TitanI, Titan II, and this case illustrates this conclusion.
The insurance policy at issue in the Titan cases differed fundamentally from the linebacker policy at issue here. To be sure, the Titan policy and the linebacker *Page 1032 
policy contain functionally identical definitions of "insured." The linebacker policy defines an "insured" as "[e]mployees of [the City of Attalla] while acting within their scope of duties while conducting the business of [the City of Attalla]," while the Titan policy defined insureds as "[a]ll law enforcement officers" of the City of Montgomery while they were performing "acts within the scope of their duties for [the City of Montgomery]." Titan II, 679 So.2d at 703 n. 1 (emphasis omitted).
The Titan policy differed, however, in that Part I.E. of that policy purported to cover only unintended personal injury, while Part I.F. purported to cover "intentional acts," such as "acts of malicious prosecution, assault and battery, wrongful entry, piracy, and other offenses that require proof of intent."Titan I, 641 So.2d at 768. The linebacker policy contains noprovision comparable to Part I.E. of the Titan policy. Titan I
simply held: "[T]he conflict between [Part I.E. and Part I.F.] creates an inherent ambiguity within the policy, and it is well settled in this state that when there is any doubt as to whether insurance coverage exists under a policy, the policy must be construed for the benefit of the insured." Titan I,641 So.2d at 768.
That rule simply places Titan I within a genre of cases holding that a policy purportedly providing coverage forintentional torts, while, at the same time, excluding coverage for expected or intended injuries, is illusory, ambiguous, or inconsistent, necessitating judicial construction of the policyin favor of coverage. See, e.g., Titan Indemnity Co. v.Newton, 39 F.Supp.2d 1336 (N.D.Ala. 1999); Lineberry v. StateFarm Fire Cas. Co., 885 F.Supp. 1095 (M.D.Tenn. 1995);Lincoln Nat'l Health Cas. Ins. Co. v. Brown, 782 F.Supp. 110
(M.D.Ga. 1992); Purrelli v. State Farm Fire Cas. Co.,698 So.2d 618 (Fla.Dist.Ct.App. 1997); Davidson v. Cincinnati Ins.Co., 572 N.E.2d 502 (Ind.Ct.App. 1991); Bailer v. Erie Ins.Exchange, 344 Md. 515, 687 A.2d 1375 (1997). In other words,Titan I did not consider the relationship between a provision purporting to exclude from coverage acts outside the line and scope of employment, and another purporting to include coverage for constitutional or civil rights violations.
Neither was that relationship explored in Titan II. On the contrary, in Titan II we said: "Titan insists that Titan I is not the law of this case, because, it argues, we are here presented with an issue not addressed or confronted in TitanI, namely, whether the defendant officers are `insureds' within the meaning of the policy language." Titan II,679 So.2d at 705 (emphasis on "insureds" original; other emphasis added). Riley, the plaintiff-appellee in the Titan cases, argued "that the dispositive question of Titan's duty to its insureds underthe policy was determined adversely to it in Titan I, and thatTitan I, therefore, establish[ed] the law of th[e] case [forTitan II]." Id. at 704 (emphasis added).
This Court agreed with Riley. Indeed, in the introductory
portion of the opinion, we said: "This is the second time wehave addressed issues in this action." 679 So.2d at 702
(emphasis added). The substantive discussion of the opinion was divided into two parts. Part I was entitled: "I. Law of theCase." We did not address Titan's argument that the officerswere not "insureds." Instead, at the conclusion of Part I, this Court said:
 "[I]f the conduct giving rise to this dispute was covered as to Titan's duty to defend, that same conduct also provides the basis for imposing on Titan a duty to indemnify. We conclude, therefore, that Titan I establishes the law of this case *Page 1033 
as to Titan's liability for indemnification under the policy."
Titan II, 679 So.2d at 705. Finally, summarizing our holdings in that case, we said: "In summary, based on the holding ofTitan I, we conclude that the trial court properly entered the judgment in favor of Riley. . . ." Titan II, 679 So.2d at 707
(emphasis added). Because the Titan cases have no bearing on this certified question, we turn to the alternative arguments of Shrader and Livingston.
 II. Is the EMCC Policy Ambiguous or Illusory?
A provision is ambiguous "`when it may be understood in more than one way or when it refers to two or more things at the same time.'" Zitterow v. Nationwide Mut. Ins. Co., 669 So.2d 109,112 (Ala. 1995) (quoting American Reliance Ins. Co. v.Mitchell, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989)). However, the "parties' conflicting constructions of otherwise unambiguous policy language do not necessarily render the disputed language ambiguous." Canal Ins. Co. v. Old RepublicIns. Co., 718 So.2d 8, 12 (Ala. 1998).
"When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory."Purrelli v. State Farm Fire Cas. Co., 698 So.2d 618, 620
(Fla.Dist.Ct.App. 1997). Alabama law does not "`countenance such illusory "coverage."'" Industrial Chem. Fiberglass Corp. v.Hartford Accident Indem. Co., 475 So.2d 472, 479 (Ala. 1985) (quoting Sears, Roebuck Co. v. Reliance Ins. Co.,654 F.2d 494, 499 (7th Cir. 1981)).
Shrader and Livingston contend that "limiting coverage for civil rights violations . . . to those civil rights violations that occur in the line and scope of an employee's duties would result in illusory coverage," or, alternatively, would create an "inherent ambiguity within the policy" requiring judicial construction of the policy in favor of coverage. This is so, because, they argue, "most, if not all, civil rights violations occur outside the scope of an employee's duties." In their briefs, Shrader and Livingston cite no authority for this latter proposition, and, in fact, it is easily refuted.
As illustrated by the underlying cases out of which this declaratory-judgment action arose, § 1983 "provides a method for vindicating [violations of] federal [constitutional and statutory] rights." Alexander v. Newman, 345 F.Supp.2d 876, 882
(W.D.Tenn. 2004). "The two key elements establishing a violation of § 1983 are (1) a deprivation of a federally guaranteed right, (2) perpetrated under color of state law." Burrell v. City ofMattoon, 378 F.3d 642, 647 (7th Cir. 2004) (emphasis added).
The meaning of the phrase "under color of law" is broader
than the phrase "within the line and scope of employment."Graham v. Sauk Prairie Police Comm'n, 915 F.2d 1085, 1093 (7th Cir. 1990). It does not follow, however, that § 1983 provides a remedy only if a state official acts outside the scope of his or her employment. On the contrary, § 1983 imposes liability on state officials for conduct taken within, as well as "without[,] the scope of their authority." Westberry v. Fisher,309 F.Supp. 12, 15 (D.Me. 1970).
"[U]nder `color' of law means under `pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." Screws v. United States, 325 U.S. 91, 111,65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (emphasis added). However, "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their *Page 1034 
authority or overstep it." Id. (emphasis added).
Under Alabama law, the acts of employees are deemed to be within the scope of their employment if the acts are "`so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.'" Ex parte Atmore Cmty. Hosp.,719 So.2d 1190, 1194 (Ala. 1998) (emphasis added) (quoting Prosser Keeton, The Law of Torts 503 (5th ed. 1984)).
These two concepts overlap in significant measure, where an official's conduct would satisfy the requirements of both "color of law" and "scope of employment." See, e.g., Wilson v. Cityof Chicago, 120 F.3d 681 (7th Cir. 1997) (both requirements were satisfied in a case in which a police officer tortured a confession from a criminal suspect); Graham v. Sauk PrairiePolice Comm'n, 915 F.2d at 1093 (both requirements were satisfied in a case in which a police officer shot "a handcuffed, unresisting arrestee who posed no threat to [the officer] or any other person"); Hibma v. Odegaard, 769 F.2d 1147, 1150 (7th Cir. 1985) (both requirements were satisfied in a case in which three deputy sheriffs "committed a series of burglaries" and conspired to "frame" the plaintiff for the crimes). Accord TitanIndem. Co. v. Newton, 39 F.Supp.2d at 1342 (police officer in charge of narcotics enforcement, who fabricated evidence by "plant[ing] . . . drugs to get a conviction," was acting within the scope of his employment).
Because the presence of circumstances implicating both "color of law" and "scope of employment" could trigger the duty of the issuer of a policy like the one in this case not only to defend, but also to indemnify, the insureds, there is no conflict between Part II.F.1.f., which provides coverage for "violations of [civil] rights," and Part II.C.3., which limits that coverage to "employees . . . while acting within their scope of duties." Consequently, the policy is not illusory.
As a corollary, in the absence of such a conflict the policy is not ambiguous. This is so, because there is nothing inherently ambiguous about the phrase, "employees . . . while acting within their scope of duties." To be sure, the phrase narrows the available coverage. "However, it is . . . well settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage." St. Paul Mercury Ins. Co. v. Chilton-ShelbyMental Health Ctr., 595 So.2d 1375, 1377 (Ala. 1992). "If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy . . . by making a new contract for the parties." Id.
For these reasons, we hold that a policy provision defining an "insured" as an employee acting "within the scope of duties" while conducting the business of the employer does not conflict with a separate provision in the same insurance policy providing coverage for "violations of constitutional/civil rights" so as to create an ambiguity that must be construed against the insurer.
QUESTION ANSWERED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] This argument is that, according to Titan II, "a scope of duties limitation in the definition of `insured' can limit broader insurance policy provisions providing coverage for violations of constitutional and civil rights." Mallard,309 F.3d at 1311. *Page 1035