This is a suit on a promissory note brought by SouthTrust Bank of the Quad Cities against James A. Dardess. Dardess filed an answer alleging fraud in the procurement of the promissory note, failure of consideration, and breach of contract. Dardess also counterclaimed, alleging fraud and breach of contract. At the close of all the evidence, SouthTrust moved for a directed verdict, which the trial court granted but only as to Dardess's counterclaim for fraud. All other issues were submitted to a jury, which returned the following verdict: "We, the jury, find in favor of the Plaintiff SouthTrust, and against the Defendant, Dardess, and assess the Plaintiff's damages at $52,423.31. We further find in favor of the Plaintiff and against the Defendant on the counterclaim." Dardess appeals and presents these issues for review:
 "I. Whether or not defendant Dardess had adduced sufficient evidence to allow the issue of fraud to go to the jury on his counterclaim.
 "II. Whether or not the Court erred in allowing the admission of a copy of [Canon 5, Code of Professional Responsibility of the Alabama State Bar] into evidence in support of plaintiff's defense of defendant's counterclaims against it.
 "III. Whether or not the court erred in prescribing a verdict form which would not allow the jury in this cause to find for plaintiff on its claim, but also find for defendant on his claims against plaintiff." *Page 748 
Beginning in 1981, Dardess borrowed from SouthTrust various sums of money secured by promissory notes. These notes were consolidated and renewed several times, so that on January 17, 1986, Dardess executed a renewal note for $44,923.31, plus interest. The note was due on May 17, 1986. Dardess, an attorney, had closed loans for residential real estate for SouthTrust prior to 1984, when he filed a $500,000 counterclaim for a client against SouthTrust. From the record, it appears that Dardess closed no loans for residential real estate for SouthTrust from 1984 until January 17, 1986.
Six days after Dardess signed the January 17, 1986, promissory note, Dardess signed an agreement in which he assigned to SouthTrust all his future income for legal services performed for third parties who obtained real estate loans from SouthTrust. After January 17, 1986, and before the promissory note matured, Dardess closed approximately one-third (six of 19) of SouthTrust's residential real estate loans that required the services of an attorney.
Pursuant to the assignment agreement, he transferred all of his fees from the loan closings to SouthTrust. This amounted to $1,285, and was less than the interest that accrued on the note. Dardess made no other loan payments.
After the note matured on May 17, 1986, and was not paid, SouthTrust sued Dardess on the note, demanding judgment against him in the amount of $54,417.57, consisting of the principal note of $44,923.31, unpaid interest of $2,396.32, and attorney's fees of $7,097.94, and costs.
 I.
Dardess contends that the trial court erred in directing a verdict for SouthTrust on his counterclaim for fraud. He argues that there was sufficient evidence to submit this issue to the jury. We disagree.
Dardess testified that a representative of SouthTrust orally promised that SouthTrust "would send [Dardess] some business like [it] used to so [that Dardess would] have some income to pay [SouthTrust]." SouthTrust objected to the admission of this testimony, arguing that it should be excluded under the parol evidence rule. The trial court overruled the objection. Dardess also testified that, between January 17, 1986, and May 17, 1986, he closed six loans, collecting fees totaling $1,285; and that, had SouthTrust fulfilled its promise, he would have closed many more than the six loans that he closed during this period. A representative of SouthTrust testified that SouthTrust's policy was to refer a customer to a particular attorney only if that customer had no preference.
Dardess's counterclaim was pending on June 11, 1987; therefore, in order to have it submitted to the jury, Dardess had only to present a scintilla of evidence tending to prove each element of promissory fraud. See Code 1975, § 12-21-12. One of the elements of promissory fraud is a false representation. P S Business, Inc. v. South Central BellTelephone Co., 466 So.2d 928, 930 (Ala. 1985). See, also,Russellville Production Credit Association v. Frost,484 So.2d 1084, 1085-86 (Ala. 1986); Watters v. Lawrence County,551 So.2d 1011 (Ala. 1989). Viewing the evidence in a light most favorable to Dardess, we conclude that the jury could have reasonably inferred that a representative of SouthTrust promised Dardess that SouthTrust would refer legal business to him so that he could use the income generated therefrom to retire his indebtedness. The jury could have also found from the evidence that in Colbert County, between January 17, 1986, and May 17, 1986, SouthTrust made 19 residential loans, generating legal fees of approximately $10,000, and that Dardess closed six of those loans during this period, for which he was paid $1,285 in legal fees. Dardess offered no evidence tending to show that SouthTrust had an opportunity to send him any more of its residential loan business than it did. The representative of SouthTrust promised Dardess that SouthTrust would send him "some business." By Dardess's own admission, SouthTrust did send him some *Page 749 
business. The jury could not reasonably infer from the evidence that SouthTrust withheld any business from Dardess that it could have sent to him, in the absence of some evidence that the customers for the 13 residential real estate loans that Dardess did not close during this period did not have preferences for other attorneys to close their loans. Dardess contended that all of the income that he received from closing such loans, with the possible exception of $200, came from clients of his who expressed a preference for him as their attorney in closing loans. Because there is no evidence of a false representation on the part of SouthTrust, the trial court did not err in directing a verdict for SouthTrust on Dardess's fraud claim.
 II.
At trial, counsel for Dardess asked Goodloe Pride, a representative of SouthTrust, the following questions, to which Pride gave these answers:
 "Q. Okay. Let me ask you: Was there a time during [1984] when SouthTrust drastically reduced its business that it sent to Mr. Dardess?
 "A. I don't recall on any 'X' date any formal action being taken, you know, related to his business.
 "Q. Well, if the evidence shows that after a certain date the volume of business sent to Mr. Dardess drastically decreased, would you have any knowledge of the rhyme or reason for that decrease?"
Pride stated as one of several reasons for the decrease that Dardess, on behalf of a client, had filed a counterclaim against SouthTrust for $500,000, while at the same time he was performing legal services for third parties borrowing money from SouthTrust.
In response to the foregoing testimony, SouthTrust offered Canon 5 of the Code of Professional Responsibility of theAlabama State Bar to explain why it ceased referring business to Dardess. Canon 5 provides in pertinent part:
 "(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
 "(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-103(C).
 "(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if he reasonably determines that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each:
"[subject to certain exceptions omitted here].
 "(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment."
Code of Professional Responsibility of the Alabama State Bar, DR 5-105 (1974).
Dardess contends that the trial court erred in permitting SouthTrust to introduce Canon 5 into evidence. Canon 5, he argues, was inadmissible and highly prejudicial.
Testimony concerning whether SouthTrust had ceased to refer business to Dardess in 1984, approximately 18 months prior to the issuance of the renewal note, was not relevant to any issue in this case. Dardess introduced this irrelevant evidence and SouthTrust refuted or explained this irrelevant evidence by introducing DR 5-105. See Posey v. St. Clair County, 270 Ala. 110,113, 116 So.2d 743, 744 (1959); Sims v. Callahan, 269 Ala. 216,226, 112 So.2d 776, 784 (1959). Therefore, the trial court did not err in admitting DR 5-105. *Page 750 
 III.
Dardess argues that the trial court erred in not giving the jury the option of finding for SouthTrust on its claim on the note and finding for Dardess on his counterclaim. He does not challenge the jury's award of $52,423.31 in damages to SouthTrust. The trial court gave the following jury instructions, to which Dardess objected:
 "If after a full and fair consideration of all of the evidence in the case, you are reasonably satisfied from the evidence that the plaintiff, SouthTrust Bank, is entitled to recover against the defendant, and that the defendant is not entitled to recover against the bank on his Counterclaim, then you would use the form of verdict which reads as follows: We, the jury, find in favor of the plaintiff, SouthTrust, and against the defendant, Dardess, and assess the plaintiff's damages at blank dollars. . . . On the other hand, if after a full and fair consideration of all the evidence in the case you are satisfied — reasonably satisfied from the evidence that the plaintiff, SouthTrust, is not entitled to recover against the defendant, but that the defendant, Mr. Dardess, is entitled to recover against the plaintiff on his Counterclaim, then you would use the alternate form of verdict which reads as follows: We, the jury, find in favor of the defendant, Dardess, and against the plaintiff, SouthTrust, on the Counterclaim and assess the defendant's damages at blank dollars."
Rule 49, A.R.Civ.P., leaves it to the discretion of the trial court whether to direct the jury to return a general verdict, a general verdict accompanied by answers to interrogatories, or special verdicts. Ala.R.Civ.P. 49, committee comments. The law does not require any particular verdict form, so long as it responds substantially to the issues raised. Whitmore v. FirstCity National Bank of Oxford, 369 So.2d 517 (Ala. 1979).
However, the instruction and verdict forms given to the jury in this case did not respond substantially to the issues raised, because, under the facts in this case the jury could have found for SouthTrust on its suit on the note and for Dardess on his claim for breach of contract. The jury was not given this option, and Dardess, as well as SouthTrust, properly objected to this.
This was error, and we reverse because of this error and remand for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES, and KENNEDY, JJ., concur.