762 So.2d 356 (2000)
CP & B ENTERPRISES, INC., d/b/a World Gym
v.
Kimberly MELLERT.
Brad Rhoades
v.
Kimberly Mellert.
1971744 and 1971779.
Supreme Court of Alabama.
March 3, 2000.
*357 William W. Watts III of Hudson & Watts, L.L.P., Mobile, for appellant CP & B Enterprises, Inc., d/b/a World Gym.
Suzanne Paul of Paul & Smith, P.C., Mobile; Christ N. Coumanis of Briskman & Binion, P.C., Mobile; David G. Wirtes, Jr., of Cunningham, Bounds, Yance, Crowder & Brown, L.L.C., Mobile; Bruce J. McKee of Hare, Wynn, Newell & Newton, L.L.P., Birmingham; and Kenneth R. Raines of Wilkins, Bankester, Biles & Wynne, Bay Minette, for appellee.
HOOPER, Chief Justice.
Kimberly Mellert sued Brad Rhoades and his employer, CP & B Enterprises, Inc., d/b/a World Gym ("World Gym"). She alleged assault and battery and invasion of privacy based upon claims that she had been subjected to sexual harassment by Brad Rhoades while she was an employee of World Gym and was working at its place of business. Mellert also alleged negligence and wantonness on the part of World Gym in retaining Brad Rhoades as an employee; Mellert alleged that World Gym had retained Brad Rhoades as an employee although it had known of allegations that he had sexually harassed other females at the workplace. Mellert also sought to impose on World Gym vicarious liability for Brad Rhoades's actions. At trial, the court ruled that, as a matter of law, when the alleged harassment of Mellert occurred, Brad Rhoades was not acting in the line and scope of his employment or in furtherance of the business of *358 his employer; therefore, ratification was the sole ground upon which the question of World Gym's vicarious liability was submitted to the jury. The jury returned a verdict in favor of the plaintiff and against both defendants, assessing compensatory damages of $25,000 and punitive damages of $250,000. The court entered a judgment against both defendants, making each defendant liable for the full amount awarded by the jury. The defendants filed separate appeals.[1] We reverse and remand.

I.
The evidence presented at trial indicated that Charles Rhoades and Pamela Rhoades were the sole stockholders in the corporation that did business as World Gym. The corporation began operation of a fitness center in May 1995. The Rhoadeses' son, Brad Rhoades, was installed as director of operations for World Gym. The business hired Mellert on a part-time basis in June 1995 to work in the nursery. In February 1996, Mellert was hired to work full-time as the front-desk receptionist. Mellert testified that while she was working part-time at the gym, Brad Rhoades made offensive comments to her, saying, for example, that she "had a great body," that she "had a nice rear end," and that "he wanted to have sex with [her]." Mellert also testified that Brad threatened her that if she did not have sex with him her job would be endangered, and she testified that he told her that if she told what he had said no one would believe her. Mellert stated that after she began working full-time, Brad's conduct escalated to offensive touchings, including rubbing against her breasts, putting his hand up her shorts, and kissing her. These physical touchings, she said, all occurred within one week.
Mellert testified that after Brad kissed her, she told Shelley Beall, World Gym's general manager, and that Ms. Beall stated that she "would handle it." Mellert said she also told James Andress, the comptroller, about Brad's conduct. Mellert testified that Andress told her that "he had known of other things that have happened like this and he would handle it." Mellert said that after she had these discussions with Beall and Andress, Brad's work schedule was rearranged so that he would not be alone with Mellert in the gym. Mellert left World Gym in April 1996. Mellert's testimony was disputed by Brad Rhoades. He denied putting his hand up her shorts, and he testified that any conduct between them was consensual and that the kiss was mutual.
C.B., a former aerobics-exercise instructor at World Gym, testified that Brad subjected her to offensive comments and touchings from May to December 1995. She testified that Brad attempted to kiss her several times and exposed himself to her several times. She testified that on one occasion Brad took off all his clothes while they were alone in the aerobics room. C.B. testified that she told Dolly Banks, the assistant manager, about Brad's conduct and that Banks "laughed and said she [could] believe it." C.B. also testified that in July 1995 she told Andress about Brad's conduct. Beall, Banks, and Andress had a meeting with Charles and Pamela Rhoades, at which they discussed the allegation that Brad had exposed himself to C.B. Banks testified that, about the time of that meeting, she had revealed that Brad had also made offensive sexual comments to her. After the meeting, Beall was supposed to investigate the "rumors" about Brad's exposing himself or committing other sexual impropriety at the gym. Beall orally reported back to the Rhoadeses that she thought the exposure had happened while Brad and C.B. were involved in a "relationship" and that the Rhoadeses should not worry about it. C.B. left her employment with World Gym in December 1995.
*359 H.S., a member at the gym, testified that during the fall of 1995 Brad exposed himself to her. H.S. stated that she reported this incident to Andress and that Brad later indicated to her that his parents knew about the incident. Another member at World Gym, S.K., who had been formerly employed as the director of Gymnastics World, a separate business owned by the Rhoadeses, but located in the same building as World Gym, testified that Brad made sexual comments to her on several occasions during June 1995. S.K. left her employment with Gymnastics World in July 1995.
In January 1996, World Gym instituted what it called an "improved" sexual-harassment policy; that policy prohibited dating between employees and prohibited any discussions of a sexual nature by employees within the facility. Charles Rhoades testified that he believed this policy was instituted as a direct result of Brad's prior conduct. However, Brad was never reprimanded, suspended, fired, or otherwise punished for his conduct. Brad testified that at the time of the trial he was still employed as World Gym's director of operations.

II.
World Gym raises six issues on appeal. However, because of our resolution of one issue, we need not address the other issues. World Gym contends that the trial court erred in submitting to the jury a verdict form that prevented the jury from awarding punitive damages against Brad Rhoades only. The verdict form provided the jury with three alternatives: 1) to find in favor of the plaintiff and against both defendants, with a blank for both compensatory and punitive damages to be filled in; 2) to find in favor of the plaintiff and against only the defendant Brad Rhoades, with a blank for both compensatory and punitive damages; or 3) to find in favor of both defendants. World Gym argues that the verdict form should have provided the option of finding against both defendants but awarding punitive damages against Brad only. The trial court overruled World Gym's objection to the verdict form, on the grounds that joint tortfeasors are jointly and severally liable for damages awards.
World Gym argues that, from the evidence, the jury could have found that World Gym was only negligent and that its culpability did not rise to the level required for an award of punitive damages. However, the jury was not given this option; the verdict forms did not permit the jury to find World Gym liable for compensatory damages only, while finding Brad Rhoades liable for both compensatory and punitive damages. Mellert contends that the trial court did not abuse its discretion in submitting this verdict form to the jury. She argues that the defendants were joint tortfeasors and that under Alabama law, punitive damages are not apportionable among joint tortfeasors, either according to fault or otherwise. Further, Mellert contends, she presented clear and convincing evidence indicating that World Gym had acted wantonly and presented clear and convincing evidence supporting the imposition of vicarious liability; therefore, she argues, the jury's award of punitive damages against World Gym was supported by the evidence.
The jury was charged that it could award damages against World Gym, based on a theory of vicarious liability, on Mellert's claim alleging an assault and battery by Brad and on her claim alleging that he had violated a right of privacy. The court also charged the jury that it could award damages against World Gym for its own actions, based on Mellert's claims that it had negligently or wantonly hired, supervised, and retained Brad Rhoades as an employee. Given the evidence in this case, a finding for the plaintiff on any of these causes of action would carry a possibility of a punitive-damages award, with the exception of the negligence claim.

*360 III.
As an initial matter, we must determine whether World Gym's objection to the verdict form was properly preserved for our review. While instructing the jury, the trial court read the verdict forms it was submitting to the jury. The verdict form under which the jury found World Gym liable was described by the court as follows:
"In this case there will be three alternative forms of the verdict. The first will read as follows, and should be used if you find that the plaintiff has carried her burden of proof and has proved all of the elements of one or more causes of action against both defendants. In that case, the form of your verdict would be: `We, the jury, find in favor of the plaintiff and against the defendants, Brad Rhoades and CP & B Enterprises, Inc., and award damages in the amount of .' Thereafter there will be two blanks. If you find in favor of the plaintiff, then you would be required to enter an award of compensatory damages, as I have previously instructed you and according to the instructions that I have given you.
"As I told you earlier, punitive damages are within your sound discretion and you must make those findings which I have previously given to you in order to return a verdict of punitive damages. Therefore, each of these blanks should be completed, but in the event that you find it is appropriate to award compensatory damages but not award punitive damages, then you would simply place a line through or zeros through or something to indicate that you are awarding compensatory damages only."
(R. 623-24.) The second alternative verdict form would have allowed the jury to find in favor of World Gym and against Brad Rhoades only. The third form would have allowed the jury to find in favor of both World Gym and Brad Rhoades.
Before the court gave its jury instructions, World Gym objected to the verdict form:
"MR. WRIGHT [World Gym's Defense Counsel]: I was saying that I think the verdict form would require four different versions, because Alabama law requires that punitive damages be determined by the culpability of the perpetrator, of the person who is guilty of the misconduct. And it is in our answer also that it is unconstitutional to find oneto find a principal liable for punitive damages for the intentional acts if that's what the jury found of another. It is also unconstitutional by U.S. standards and by [the] Alabama constitution to jointly and severally declare punitive damages against two different defendants who have different causes of action against them.

"And we've gone to great lengths to listen to the plaintiff's separate causes of action against the World Gym. So there is a need for a verdict form that would include punitive damages that could be assessed separately against Brad Rhoades as opposed to World Gym. Not just the presence of punitive damages, but it would be unconstitutional I believe to disallow the jury from finding punitive damages against one defendant and not the other.
"MR. POWELL [Brad Rhoades's Defense Counsel]: And I agree with that.
"THE COURT: Well, that's not my understanding of the law. Joint tortfeasors are jointly and severally liable for the damages and I think it would be error for me to break it out, so I'm not going to.
"MR. WRIGHT: Well, we respectfully except to that.
"THE COURT: Sure, that's fine. And if they change the law and make it that, I'll be happy to start doing it. I just don't think that's the law.
"MR. POWELL: It's because of the differences of the causes of action.

"THE COURT: I'm not aware of the caselaw making any distinction in that regard. They're going to be charged *361 under the limited circumstances upon which they could find punitive damages and they are limited.
"MR. WRIGHT: Judge, I understand your order. Our presentation on that, we'll allow that to stand. I don't want to argue with you, but I don't want to also appear to be acquiescing after you have stated your opinion on it.
"THE COURT: I understand."
(R. 590-92.) (Emphasis added.) World Gym objected again, before the court charged the jury:
"MR. WRIGHT: Judge, we don't object, with two exceptions. One is what is not here is what we argued previously about a verdict form that will allow different punitive damages to be awarded separately based upon the culpability of each defendant as opposed to lumping them together....
"THE COURT: Let me just say that your objection is overruled again because the Court understands that the law in this state is very, very clear that there cannot be an apportionment of damages between tortfeasors."
(R. 593-94.) After the jury had been charged, World Gym again objected to the jury form:
"MR. WRIGHT: I think, finally, we would take exception to the omission from the jury form of any method of separating punitive damages against defendants based on their culpability and their degree of harm.
"THE COURT: Okay. All those objections are overruled."
(R. 630.)
These objections were sufficient to preserve the issue for review. World Gym appears to be objecting to the verdict forms for two reasons: 1) that they did not permit the apportionment of punitive damages based on the culpability of each defendant and 2) that they did not provide the jury the discretion to determine whether to award punitive damages against only one defendant when separate causes of action are alleged against each defendant. The trial court correctly held that punitive damages cannot be apportioned among joint tortfeasors. See Robbins v. Forsburg, 288 Ala. 108, 110-11, 257 So.2d 353, 355 (1971) (holding that "Alabama does not allow apportionment" among joint tortfeasors "even in actions where the damages recoverable are punitive"). However, it is clear that World Gym did assert that, because the plaintiff had stated separate causes of action against the two defendants, a fourth alternative form was necessary in order to provide the jury the opportunity to award punitive damages against one defendant and not the other. We do not consider this to be a matter of apportioning an award of punitive damages, but, rather, a matter of providing the jury the discretion to determine whether an award of punitive damages against a particular defendant is appropriate based on the cause of action upon which the defendant is found liable.
In Hill v. Norfolk Southern Corp., 619 So.2d 221 (Ala.1993), after the trial court had completed its oral charge to the jury, the plaintiffs stated their objection to the verdict form in the following manner:
"We would respectfully except to that part of the verdict forms given to the jury that do not give the jury an opportunity to find a verdict in favor of the plaintiffs and against the railroad company only and not against defendant Willingham, the individual defendant. It is our position that a reasonable construction of the evidence as presented to this jury would allow a finding that Defendant Willingham was not guilty of any negligence or wantonness but that some employee of the crew was, therefore the corporate defendant would be liable."
619 So.2d at 222. This Court then stated that this statement by the plaintiffs' counsel made it clear that the plaintiffs had desired special verdict forms and made it clear why they wanted such forms. This *362 Court reversed a judgment based on a verdict for both defendants. We conclude that if an objection to a verdict form is specific enough to indicate why the party is objecting, then the issue whether the verdict form was proper is preserved for review.
World Gym did not present the trial court with a written objection or with a written proposed verdict form of its own. However, we have found no precedent for the proposition that a party objecting to a verdict form must provide a written proposed verdict form of its own in order to preserve the issue for review. Rule 51, Ala. R. Civ. P., provides, in pertinent part:
"No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection. Submission of additional explanatory instructions shall not be required unless requested by the court. Additional instructions shall be submitted in writing, except that with respect to any additional instruction taken from Alabama Pattern Jury Instructions, it shall be sufficient to identify said instruction on the record by reference to the number and title of said pattern jury instruction."
Thus, it appears that a party must submit written additional instructions for the court to give the jury only upon a request by the court. World Gym's objections to the jury verdict forms were sufficient to preserve the issue for review.

IV.
We agree with World Gym that the trial court erred in failing to provide a verdict form that adequately addressed the issues raised. The claims against World Gym based on its own alleged negligence or wantonness were independent of the claims based on Brad Rhoades's actions and for which the plaintiff sought to impose on World Gym vicarious liability. The jury could have found that World Gym had been negligent in hiring, supervising and retaining Brad Rhoades, but that its conduct was not sufficient to support the plaintiffs theory of vicarious liabilitythat World Gym had ratified Brad Rhoades's actions. However, the jury was not given the opportunity to determine that World Gym was only negligent and that its conduct did not warrant an award of punitive damages.
A finding by the jury that World Gym was only negligent in hiring, supervising, and retaining Brad Rhoades would not warrant an award of punitive damages. See Tuscaloosa County v. Barnett, 562 So.2d 166, 169 (Ala.1990); Bradley v. Walker, 207 Ala. 701, 703, 93 So. 634, 635 (1922) ("`Punitive damages are not recoverable for simple negligence, but the recovery in such case is for compensatory damages.'"). In addition, even where a party's conduct would warrant an award of punitive damages, the jury has the discretion whether to award punitive damages. See Alabama Power Co. v. Rembert, 282 Ala. 5, 6, 208 So.2d 205, 206 (1968) (holding that the trial court erred when it instructed the jury "that it should assess punitive damages against appellants if appellants were guilty of wantonness"). Thus, even if the jury found that World Gym was wanton in hiring, supervising, and retaining Brad Rhoades, the jury should have been given the freedom to determine whether World Gym's conduct rose to the level of culpability necessary to impose punitive damages. Instead, the jury was forced to impose punitive damages on World Gym if it wanted to impose punitive damages on Brad Rhoades.
Mellert correctly asserts that historically Alabama has not allowed the apportionment of punitive damages among joint tortfeasors. See Robbins, supra; Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612 (1952). However, the issue in this case is not the "apportionment" of punitive *363 damages per se. Instead, the issue is whether the charge to the jury allowed the jury to find World Gym liable for punitive damages under a cause of action that does not support an award of punitive damages, while finding Brad Rhoades liable under a cause of action that does support the award of punitive damages. It is possible that the jury would have found World Gym and Brad Rhoades liable under separate causes of action. A finding of negligence on the part of World Gym would not support an award of punitive damages, and a finding of liability on the wantonness claim would merely give the jury the discretion to award punitive damages.
Mellert relies on Hare v. Patterson, 598 So.2d 795 (Ala.1992), to support her argument that the trial court did not abuse its discretion in determining which verdict forms to submit to the jury. Hare was a wrongful-death action in which the trial court submitted two verdict forms to the jury, one by which the jury could find for the plaintiff and another by which the jury could find for the defendant. After the court had charged the jury, the plaintiff Hare objected to the court's failure to give separate verdict forms by which the jury could find in favor of the plaintiff on a negligence theory or in favor of the plaintiff on a wantonness theory. Hare indicated that because the jury had been instructed on contributory negligence, it might become confused and associate the contributory-negligence charge with the wantonness claim. The jury found in favor of the defendant. This Court held that the verdict forms given by the trial court were not misleading and that the trial court did not err in declining to change them in response to Hare's objection. Hare is distinguishable from this present case because Hare involved only one defendant. The jury in Hare presumably found that the defendant was not liable under either a negligence theory or a wantonness theory. However, if the jury in Hare had found in favor of the plaintiff and had awarded damages, it is clear that punitive damages would have been appropriate under either the negligence theory or the wantonness theory, because Hare was a wrongful-death case. See Lance, Inc. v. Ramanauskas, 731 So.2d 1204, 1221 (Ala.1999) (noting that "this Court has, under the crushing weight of 150 years of stare decisis, consistently held that our wrongful-death statute allows for the recovery of punitive damages only"). In the present case, it is not clear under what theory the jury found World Gym liable; therefore, we cannot determine whether the punitive damages were properly awarded against World Gym.
This Court has previously held that "[t]he law does not require any particular verdict form, so long as [the form submitted to the jury] responds substantially to the issues raised." Dardess v. SouthTrust Bank, 555 So.2d 746, 750 (Ala.1989) (citing Whitmore v. First City Nat'l Bank of Oxford, 369 So.2d 517, 521 (Ala.1979)). In Dardess, SouthTrust Bank sued Dardess on a promissory note, and Dardess counterclaimed, alleging breach of contract. The trial court gave the jury instructions as to two alternative verdicts: The jury could find in favor of SouthTrust on its complaint and against Dardess on his counterclaim, or it could find in favor of Dardess on his counterclaim and against SouthTrust on its complaint. This Court stated that the instruction and verdict did not respond to the issues raised in the case, because, under the facts presented, the jury could have found for SouthTrust on its claim on the note and for Dardess on its counterclaim alleging breach of contract. Thus, the failure to give the jury the third option was reversible error.
In Hill v. Norfolk Southern Corp., 619 So.2d 221 (Ala.1993), the driver of an automobile sued a railroad and an engineer, seeking damages for injuries sustained in a collision at a railroad crossing. This Court held that the trial court erred in failing to submit to the jury a verdict form that would have allowed it to return a verdict against the railroad without returning a *364 verdict against the engineer of the train. In that case, after the court completed its oral charge to the jury, the plaintiff objected to the court's failure to provide the jury an opportunity to find against the railroad company only and not against the engineer. The plaintiff argued that a reasonable construction of the evidence would support a finding that the engineer was not guilty of any negligence or wantonness but that some other employee was; therefore, the plaintiff argued, the railroad could still be liable even if the engineer was not. The court overruled the objection, and the jury found in favor of both defendants. This Court held that the trial court's error was not harmless, because of the possibility that the jury returned a verdict in favor of both defendants simply because it did not want to return a verdict against the engineer for an accident that was not caused by his negligence.
This case is like Hillalthough the evidence called for an additional alternative verdict form, "the trial court [gave the jury] no alternative." 619 So.2d at 222. It is possible that, rather than award no punitive damages and let Brad Rhoades get away without punishment, the jury may have returned a verdict awarding punitive damages against both defendants because it had no alternative that allowed it to award punitive damages against Brad Rhoades and only compensatory damages against World Gym.
In Hoffman v. Chandler, 431 So.2d 499 (Ala.1983), the trial court submitted three alternative verdict forms to the jury, but this Court held that the trial court erred in failing to submit a fourth alternative. In that case, the plaintiff sued an ERISA trust and the two trustees, alleging breach of fiduciary duty and willful misconduct in their nonpayment of insurance benefits due under the benefit plan. A default had been entered against the Trust, and the three alternative verdict forms permitted the jury to find 1) against the Trust and in favor of both of the trustees; 2) against the Trust and against both trustees; or 3) against the Trust and to "have a hung jury and mistrial" as to the two trustees. 431 So.2d at 504.
This Court held in Hoffman that the trial court should have permitted the jury to find in favor of one individual trustee and against the other. The trial court's failure to offer this alternative constituted reversible error. In its holding, this Court stated:
"Although joint liability was authorized, it was not mandated under the pleadings and proof of this case. Each defendant was sued in his individual capacity, based upon his particular role in Plaintiff's alleged factual scenario. While we express no opinion as to what result should obtain from the record before us, we are clear to the conclusion that one of the viable options available to the jury was foreclosed by the verdict forms and the trial court's oral instruction relative thereto. By this procedure, the trial court erred to reversal."
431 So.2d at 505. (Citation omitted.)
Similarly, in this present case, under the pleadings and the proof offered, it is possible that the jury could have found that World Gym was merely negligent in its actions; such a finding would not support a punitive-damages award. The jury was not afforded the opportunity to make that finding. Furthermore, even if the jury found World Gym liable under the wantonness theory, it should have been given the discretion not to award punitive damages against World Gym, while awarding punitive damages against Brad Rhoades.
For these reasons, the verdict forms submitted to the jury did not "respond[ ] substantially to the issues raised" by the evidence. Dardess, 555 So.2d at 750. Therefore, the judgment of the trial court against World Gym is reversed and the cause is remanded.

V.
Because we are reversing the judgment against World Gym, we must also reverse *365 the judgment against Brad Rhoades. At common law, the reversal of a judgment as to one defendant required reversal as to all defendants because "a joint judgment was regarded as an entirety." Alabama Power Co. v. King, 280 Ala. 119, 124, 190 So.2d 674, 679 (1966). This "rule of entirety" has been modified in cases where the judgment is several in effect and the interests of the parties are distinct; however, the modification has "never been applied where it might work an injustice to one party defendant if the judgment were to be affirmed as to him while reversed as to one or more of the joint defendants. In such case the power exists, in the ends of justice, to reverse the judgment in its entirety." 280 Ala. at 125, 190 So.2d at 680.
The claims against Brad Rhoades and World Gym are so intertwined as to be inseparable; therefore, our reversal of the judgment against World Gym necessitates a reversal as to Brad Rhoades. It would be unfair to leave one defendant liable for the entire amount of a judgment rendered against both defendants. In addition, a new trial for World Gym alone could lead to inconsistent judgments.
1971744REVERSED AND REMANDED.
1971779REVERSED AND REMANDED.
MADDOX, HOUSTON, SEE, and BROWN, JJ., concur.
LYONS, JOHNSTONE, and ENGLAND, JJ., concur as to case no. 1971744 and dissent as to case no. 1971779.
LYONS, Justice (concurring in part and dissenting in part).
I concur except as to Part V, which reverses the judgment as to Brad Rhoades.
In this sexual-harassment case, Rhoades was potentially liable for assault and battery and breach of privacy, intentional torts for which punitive damages were recoverable in the discretion of the jury. World Gym was potentially liable on two theoriesvicarious liability for ratifying Rhoades's wrongful acts and direct liability for its own negligence or wantonness in retaining Rhoades as an employee. The trial court denied World Gym's request for a verdict form that would have permitted the jury to deal separately with World Gym's liability for punitive damages. As the majority opinion points out, from the evidence the jury could have found World Gym not liable on the theory of ratification but liable on the theory that it had negligently retained Rhoades as an employee. Such a finding would have made any punitive-damages award against World Gym inappropriate. Or, from that same evidence, the jury could have found World Gym liable on the theory that it wantonly retained Rhoades as an employee, but that World Gym's wantonness did not justify a punitive-damages award identical to the punitive-damages award the jury wished to impose against Rhoades for his separate torts of breach of privacy and assault and battery. But, the jury forms did not allow the jury to separate World Gym's liability for punitive damages from Rhoades's liability for punitive damages.
The jury returned a verdict against both defendants, assessing $25,000 in compensatory damages and $250,000 in punitive damages. The court entered a judgment on that verdict. The majority reverses the judgment in its entirety, even as to Rhoades. Its rationale for reversing as to World Gym is that "the jury was forced to impose punitive damages on World Gym if it wanted to impose punitive damages on Brad Rhoades." 762 So.2d at 362. To be sure, Rhoades could have argued on appeal that the verdict form prejudiced him as well, because, for all that appears, the high punitive-damages award may have been based on a desire by the jury to punish World Gym for wantonness in retaining Rhoades, although, at the same time, if a separate verdict form had allowed it the latitude to do so, the jury may have determined that a substantially smaller award would be sufficient to punish him, or, in its *366 discretion, it may have determined not to award punitive damages against him. However, on appeal Rhoades merely adopted the briefs of World Gym. Those briefs offer no reason for reversing the judgment as to Rhoades.
The majority relies on Alabama Power Co. v. King, 280 Ala. 119, 190 So.2d 674 (1966). In that case the trial court's judgment held two automobile drivers and the power company jointly liable, based on a finding that they had caused the plaintiffs' house to burn as a result of an automobile's colliding with a power pole. On appeal, this Court determined that as to the power company the complaint should have been dismissed for a failure to aver negligence against the defendant. The automobile drivers argued on appeal that the negligence charged against them individually and the resulting damage to the plaintiffs were "not sufficiently conjoined as to cause and effect as to support a cause of action." 280 Ala. at 124, 190 So.2d at 679. This Court reversed the entire judgment, pretermitting any discussion of the argument made by the individual defendants, who had in fact filed briefs asking for a reversal as to them. The Court stated that the pleadings and the proof rendered the claims against the power company and the two individual defendants "so intertwined as to be inseparable." 280 Ala. at 124, 190 So.2d at 679.
Here, the majority reverses as to World Gym, accepting its argument of separabilitythat the causes of action against it and the individual defendant are separable not an argument of inseparability, and then reverses as to Rhoades even though Rhoades, unlike the automobile drivers in King, makes no separate argument that he was the victim of any injustice.
I respectfully dissent as to Part V.
JOHNSTONE and ENGLAND, JJ., concur.
NOTES
[1] On appeal, Brad Rhoades has adopted the briefs filed by World Gym.