[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 02-10786

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 18 2002
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-01062-CV-BU-M

EMPLOYERS MUTUAL CASUALTY COMPANY,
an insurance company incorporated in the State
of Iowa,

Plaintiff-Appellee,

versus

FLETCHER MALLARD,
BARNIE GILLILAND

Defendants,

JANICE SHRADER,
DEBRA LYNN MINNIX LIVINGSTON,

Defendants-Appellants.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama

———————————————

(October 18, 2002)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

In this declaratory judgment action, Janice Shrader and Debra Lynn Minnix Livingston appeal the district court's order concluding that the insurance policy issued by Employers Mutual Casualty Company ("EEMC") does not provide coverage for their 42 U.S.C § 1983 claims and other claims made against employees of the City of Attalla, Alabama. After review, we certify a question to the Alabama Supreme Court.

## I. BACKGROUND

The facts in this case largely are undisputed.

### A. Underlying § 1983 Actions

In February 2000, Shrader filed a complaint against the City of Attalla, Fletcher Mallard, a city police officer, and Barnie Gilliland, a part-time bailiff at the city jail. Shrader's complaint alleges that Mallard and Gilliland sexually abused her after her arrest for driving under the influence, driving with a suspended or revoked license, and reckless driving on April 7, 1999. Shrader's complaint asserts claims for violation of her constitutional rights pursuant to 42 U.S.C. § 1983 and for negligence, wantonness, and civil conspiracy.

In July 2000, Livingston filed a similar complaint against the City of Attalla, Mallard, and Gilliland, alleging that Mallard and Gilliland sexually abused her after she was arrested for driving under the influence, reckless driving, and resisting arrest on August 9, 1998. Livingston's complaint asserts claims for

2

violation of her constitutional rights pursuant to 42 U.S.C. § 1983 and for civil conspiracy against Mallard and Gilliland.[1]

On March 12, 2001 the district court granted summary judgment in favor of the City of Attalla in Shrader's case. On April 20, 2001, the district court likewise granted summary judgment in favor of the City of Attalla in Livingston's case. Neither Shrader nor Livingston appealed the entry of summary judgment in favor of the City. Both cases remained pending against Mallard and Gilliland.

Shrader and Livingston subsequently settled their claims against Mallard and Gilliland. On April 27, 2001, the district court entered identical orders in both cases, dismissing each case without prejudice and allowing any party to reopen the case within thirty days or to submit a stipulated form of final judgment. The district court's order also reserved jurisdiction for thirty days for the filing of motions to enforce the settlements. No such motions were filed in either case.

## B. EMCC's Insurance Policies and Declaratory Judgment Action

EMCC issued a commercial general liability policy ("CGL"), as well as a linebacker policy, to the City of Attalla.[2] Shrader and Livingston conceded that

---

[1]The parties do not dispute that Mallard and Gilliland, while employed by the City of Attalla, sexually abused Shrader and Livingston. According to Shrader, Mallard and Gilliland sodomized and coerced her into performing oral sex on them while she was in jail. Livingston alleges that she was raped by Mallard and that Gilliland touched her all over her body and briefly attempted intercourse.

[2]Although the facts indicate that EMCC issued two separate CGL policy numbers and two separate linebacker policy numbers to the City of Attalla, the two

3

neither of the CGL policies provide coverage for their claims and stipulated that their claims for coverage are limited to the linebacker policies.

On April 27, 2001, EMCC filed a declaratory judgment action in the district court seeking a declaration that the linebacker policy did not cover Shrader's and Livingston's claims against Mallard and Gilliland. On January 11, 2002, the district court granted summary judgment in favor of EMCC, holding that the linebacker policy was "unambiguous" and did not provide coverage to Mallard and Gilliland for their sexual abuse of Shrader and Livingston. The district court concluded that Mallard and Gilliland's conduct was outside the scope of their duties in conducting the business of the City of Attalla, and, therefore, not covered by the linebacker policy. Shrader and Livingston timely appealed.

## II. STANDARD OF REVIEW

We review de novo the district court's rulings on motions for summary judgment. SCI Liquidating Corp. v. Hartford Fire Ins. Co., 181 F.3d 1210, 1212 (11th Cir. 1999) (citing Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999)).

---

respective policy numbers refer to the same policy issued in two consecutive years. As to the CGL policy, policy number 1K4-62-00-99 covers from April 3, 1998 to April 3, 1999, and policy number 1K4-62-00-00 covers from April 3, 1999 to April 3, 2000. As to the linebacker policy, policy number 1M4-62-00-99 covers from April 3, 1998 to April 3, 1999, and policy number 1M4-62-00-00 covers from April 3, 1999 to April 3, 2000.

4

## III. DISCUSSION

### A. Alabama Law

In this diversity action, Alabama's substantive law governs the interpretation of the linebacker policy at issue.  Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 819 (11th Cir. 1985) (holding that, under Erie Railroad v. Tompkins, 304 U.S. 64 (1938), a federal court hearing a diversity action must apply the controlling substantive law of the state and that the construction of insurance contracts is governed by substantive state law);  see Hartford Fire Ins., 181 F.3d at 1214. Under Alabama law, the burden is on the insured to establish coverage exists under an insurance policy.  See Life & Casualty Ins. Co. of Tenn. v. Garrett, 35 So. 2d 109, 111 (Ala. 1948); see also Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 602 (11th Cir. 1993) (citing Colonial Life & Accident Ins. Co. v. Collins, 194 So, 2d 532, 535 (Ala. 1967)).  Alabama law further provides that while an insurance policy that contains no ambiguities must be enforced as written, where an ambiguity exists, they "are to be resolved in favor of the insured." Southern Guaranty Ins. Co. v. Wales, 218 So. 2d 822, 826 (Ala. 1969);  see also Guaranty National Ins. Co. v. Marshall County Bd. Of Educ., 540 So. 2d 745 (Ala. 1989).

### B. Shrader and Livingston's Contentions

Shrader and Livingston argue that the district court erred because the linebacker policy expressly covers civil rights violations, such as sexual assault committed by City of Attalla employees. Shrader and Livingston emphasize that, at a minimum, there is an ambiguity in the terms of the linebacker policy that should be construed against EMCC, thereby resulting in coverage.

As argued by Shrader and Livingston, Part I of the linebacker policy provides coverage for personal injury damages paid in connection with a civil rights violations as follows:

> PART I–COVERAGE
> A. Agreement
> We will pay "Loss" and/or "Defense Expenses" to which this insurance applies excess of the deductible stated in the Declarations provided that:
> . . .
> B. "Loss" means sums:
> 1. Which an "insured" is legally obligated to pay as compensatory damages . . .
> because of a wrongful act.
> . . .
> D. "Personal Injury" means:
> . . .
> f. Violations of constitutional/civil rights or improper service of process as it relates solely to the "organization's" law enforcement activities.

Although Part I provides coverage for personal injury, Part III of the linebacker policy then excludes coverage for personal injury claims. But then an endorsement to the linebacker policy deletes the exclusion for personal injury and amends the

6

definition of "Wrongful Act" to include personal injury.[3]  The net result is the

linebacker policy covers claims for personal injury, which is defined to include

civil rights violations.

Although providing coverage for civil rights violations, the linebacker policy

also limits the definition of "insured" to employees acting within the scope of their

duties as follows:

---

[3]The endorsement provides as follows:

> THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
>
> PERSONAL INJURY ENDORSEMENT
> For the additional premium charged, Exclusion H
> [("Personal Injury"] is deleted and
> 1.  The definition of "Wrongful Act" is amended to read as follows:
>> J.    "Wrongful Act" means any of the following:
>> 1.  Actual or alleged errors;
>> 2.  Misstatement or misleading statement;
>> 3.  Act or omission or neglect or breach of duty by an  "insured";
>> 4. "Personal Injury"
>> in the discharge of "organization duties."
> 2.  The following Exclusions are added with respect to "Personal Injury" Coverage.
>> This Policy does not apply to "Personal Injury":
>> A.   arising out of oral or written publication of material if done by or at the direction of the "Insured" with knowledge of its falsity;.[sic]
>> B.   arising out of the willful violation of a penal
> statute or
>> ordinance committed by or with the consent of the
> "Insured".

7

PART II–DEFINITIONS

. . .

C.    "Insured" means:

. . .

3.    Employees of the "organization" while acting within their scope of duties while conducting the business of the "organization" . . . .

Shrader and Livingston emphasize that civil rights violations frequently involve conduct outside of the scope of a police officer's duties. Thus, Shrader and Livingston argue that the policy's language providing coverage for "[v]iolation of constitutional/civil rights," when read together with its definition of "insured" with its limiting "scope of duties" language creates conflict between the provisions and creates an inherent ambiguity within the policy which must be construed for the insured's benefit.

Alternatively, Shrader and Livingston argue that limiting coverage for civil rights violations only to those civil rights violations that occur in the scope of an employee's duties would result in illusory coverage. Shrader and Livingston contend that most, if not all, civil rights violations occur outside the scope of an employee's duties. Therefore, according to Shrader and Livingston, denying coverage will result in an exclusion or limitation essentially swallowing up the purported coverage which, under Alabama law, violates the doctrine of illusory coverage. See Industrial Chem. & Fiberglass Corp. v. Hartford Acc. & Indem. Co.,

8

475 So. 2d 472, 478-79 (Ala. 1985) (noting that "the law cannot countenance . . . illusory 'coverage'" in the context of construing ambiguous policies); see also Titan Indem. Co. v. Newton, 39 F. Supp. 2d 1336, 1344-45 (N.D. Ala. 1999) (noting that "Alabama recognizes [the illusory coverage doctrine] that the language or interpretation of an ambiguous provision by an insurance company may be so tortured as to result in 'illusory' coverage")

## C.    EMCC's Contentions

In response, EMCC argues that Shrader and Livingston cannot recover under the linebacker policy because Mallard and Gilliland cannot show that they were entitled to coverage as "insureds" as defined in the policy.[4]  In making this assertion, EMCC suggests that Mallard and Gilliland are excluded from coverage because the linebacker policy defines an "insured" as "employees of the [City] while acting within their scope of duties while conducting the business of the [City]," (emphasis added), and that the act of sexual assault is always outside the scope of a law enforcement officer's duties.[5]

---

[4]As an alternative ground for denying recovery to Shrader and Livingston, EMCC argues that the manner in which the underlying sexual assault claims were settled does not result in Mallard and Gilliland's being "legally obligated to pay [any] compensatory damages" as required by the linebacker policy.  After review and oral argument, we conclude that this contention is without merit.

[5]To the extent that EMCC argues that coverage also should be denied because "wrongful acts" as defined by the policy must be committed "in the discharge of [City] duties," we note that this argument is essentially a permutation of their scope-of-duties argument.

It is a well-settled principle of Alabama law that sexual assault lies outside the scope of an employee's duties. Doe v. Swift, 570 So. 2d 1209, 1211 (Ala. 1990) (citing numerous cases in which Alabama courts held that sexual misconduct was outside the scope of employment). In defining the outer limits of the scope of employment, the Alabama Supreme Court in Doe stated that "'[t]he conduct of the employee . . . must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment.'" Id. (quoting Solmica of the Gulf Coast, Inc. v. Braggs, 232 So. 2d 638, 642 (Ala. 1970)) (emphasis in original).

Moreover, the Alabama Supreme Court previously has held that an insurance policy containing a definition of "insured" similar to that at issue in the EMCC policy did not cover sexual assault by an employee of a private company. In Capital Alliance Insurance Co. v. Thorough-Clean, Inc., the Alabama Supreme Court stated that where an insurance policy defined an "insured" as "'employees . . . but only for acts within the line and scope of their employment,'" an employee from a private company who raped another employee "d[id] not qualify for coverage under the terms of the policy, because he would have been acting outside the line and scope of his employment in raping." 639 So. 2d 1349, 1351 (Ala. 1994). However, the Alabama Supreme Court's discussion in Capital Alliance neither alludes to the insurance policy at issue covering civil rights violations nor

10

addresses the construction of a policy containing coverage for civil rights violations but restricting coverage to employees acting within their scope of duties. See generally Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So. 2d 1349 (Ala. 1994). Thus, the two clauses at issue here were not addressed in Capital Alliance.

## D.      Titan I and Titan II

We recognize that Titan Indemnity Co. v. Riley, 641 So. 2d 766, 768 (Ala. 1994) (Titan I) and the subsequent case of Titan Indemnity Co. v. Riley, 679 So. 2d 701 (Ala. 1996) (Titan II), did involve the interpretation of two insurance clauses similar to those in dispute here. Titan II, 679 So. 2d at 705. However, as explained below, the solution to the issue here is not clear from those decisions.

The underlying facts in Titan I and Titan II are the same. Titan Indemnity Company brought a declaratory action seeking a determination of whether Titan was obligated to defend (Titan I) and indemnify (Titan II) four City of Montgomery police officers in connection with a 42 U.S.C. § 1983 action based on violation of the plaintiff's constitutional rights. The insurance policy in question covered "Personal Injury," which the policy defined as, inter alia, "[v]iolation of civil rights," and limited the definition of "insured" to "[law enforcement officers] . . . but only for acts within the scope of their duties for [the City]." Titan II, 679 So. 2d at 703 & n.1 (citing Titan I, 641 So. 2d at 768). In Titan I, the Alabama

11

Supreme Court concluded that "the language of the policy d[id] preclude coverage for intentional acts, but it also specifically provide[d] coverage for . . . offenses that require proof of intent . . . [and] specifically provide[d] coverage for claims brought under the Federal Civil Rights Act." Titan I, 641 So. 2d at 768. As a result, the conflict between the provisions created "an inherent ambiguity within the policy." Id. This conflicting language and resulting ambiguity in the policy, when interpreted in favor of the insured, resulted in coverage for the defense of the 42 U.S.C. § 1983 claims against the officers. Id.

Titan II followed two years later and concluded that Titan Indemnity Company must also indemnify the employees for any monetary claim paid in settlement of the § 1983 claim. The Alabama Supreme Court rejected the argument, which EMCC makes on appeal here, that a scope-of-duties limitation restricts coverage for constitutional or civil rights violations, stating as follows:

> Specifically, [Titan Indemnity Company] argues:
>
> > The Titan policy expressly requires that the matters for which coverage is sought must result from law enforcement activities, and that no person claiming coverage is an insured unless the acts complained of are 'acts within the scope of their duties for' the City of Montgomery. The allegations made against the Defendant officers in no way can be construed to be in the furtherance of law enforcement activities or within the scope of their duties for the City. . . .

We are unpersuaded by these arguments–they are essentially restatements of the ones Titan relied on in [Titan I].

Titan II, 679 So 2d. at 705 (citing Brief for Titan Indemnity Co. at 58). Based on the above quoted passage, Shrader and Livingston argue that in Titan II, the Alabama Supreme Court considered and rejected the argument that a scope of duties limitation in the definition of "insured" can limit broader insurance policy provisions providing coverage for violations of constitutional and civil rights.

The basis for this rejection, however, is unclear. As EMCC points out, another section of the Titan II opinion appears to indicate that the Alabama Supreme Court rejected this argument based only on a law-of-the-case ground. In this regard, the Alabama Supreme Court stated as follows:

Given our conclusion in [Titan I], it would be inconsistent for us to hold in this case, that the officers, who committed the conduct, were not covered. Otherwise stated, if the conduct giving rise to this dispute was covered as to Titan's duty to defend, that same conduct also provides the basis for imposing on Titan a duty to indemnify. We conclude, therefore, that Titan I establishes the law of this case as to Titan's liability for indemnification under the policy.

Titan II, 679 So. 2d at 705. Thus, it is unclear in Titan II whether the Alabama Supreme Court rejected Titan Indemnity Company's arguments on the merits, concluding that coverage was required due to the ambiguity in coverage, or

13

whether the court simply was bound by the prior ruling in Titan I.[6]  As a result, this Court faces an unsettled issue of Alabama law that is determinative of the issue in this appeal.  We, therefore, certify this question for resolution by the Alabama Supreme Court.

**E.  Certification to the Alabama Supreme Court**

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF ALABAMA AND ITS HONORABLE JUSTICES:

Because this appeal depends on resolution of this question of unsettled Alabama law, we certify the following question to the Supreme Court of Alabama:

DOES AN INSURANCE POLICY PROVISION LIMITING AN "INSURED" TO AN EMPLOYEE ACTING "WITHIN THE SCOPE OF DUTIES" WHILE

---

[6]Although we leave the proper construction of Titan II to the Alabama Supreme Court,  we note the argument that the language in the opinion appears to point toward the Alabama Supreme Court's conclusion that it was bound by the prior decision in Titan I.  First, there is no discussion of the conflict between the "scope of duties" provision and the purported coverage for civil rights violations. See Titan II, 679 So. 2d at 704-06.  Second, and more indicative, the Alabama Supreme Court, in rejecting Titan's argument, immediately thereafter concludes that "Titan I establishes the law of this case as to Titan's liability for indemnification under the policy."  Id. at 705.

CONDUCTING THE BUSINESS OF THE EMPLOYER CONFLICT WITH A SEPARATE PROVISION IN THE SAME INSURANCE POLICY PROVIDING COVERAGE FOR "VIOLATIONS OF CONSTITUTIONAL/CIVIL RIGHTS" SO AS TO CREATE AN AMBIGUITY THAT MUST BE CONSTRUED AGAINST THE INSURER?

The phrasing used in this certified question should not restrict the Supreme Court's consideration of the problem posed by this case. This extends to the Supreme Court's restatement of the issues and the manner in which the answer is given. To assist the Supreme Court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Alabama.

**QUESTION CERTIFIED.**