[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-10726

Non-Argument Calendar

————————————————

ACCIDENT INSURANCE CO., INC.,

Plaintiff-Counter Defendant-Appellee,

*versus*

MATHEWS DEVELOPMENT COMPANY, LLC,
JAMES E. MATHEWS,

Defendants-Counter Claimants-Appellants,

COURTNEY JORDAN, et al.,

Defendants.

———————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cv-00848-RAH-SMD

———————————

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

This is an insurance dispute arising out of alleged defects in the construction of a new house. The insurer, Accident Insurance Co., Inc. ("ACI"), brought this action seeking a declaration that it owed no duty to defend its insured, Mathews Development Company, LLC, under a commercial general liability policy against a complaint by the home buyers against Mathews Development and its owner, James Mathews (collectively, "Mathews"). The district court granted summary judgment to ACI, concluding that Mathews failed to comply with an endorsement governing coverage for claims based on the work of subcontractors, and that a "tract housing" exclusion applied to bar coverage. Mathews appeals both rulings. After careful review, we affirm based on the subcontractors endorsement without reaching the tract housing exclusion.

**I.**

Mathews was one of six new home builders in the Stone Park subdivision located just outside Montgomery, Alabama. Mathews constructed at least one hundred houses in Stone Park,

one of which it sold to Edward and Ruth Thomas in 2017. To perform all the construction work for the Thomases' home, Mathews hired subcontractors.

Two years later, in 2019, the Thomases sued Mathews in Alabama state court. They alleged that the "home had and continues to have foundation cracking problems due to the home not being properly constructed according to the applicable standards and codes." And they asserted that, because of Mathews's failure to construct or repair the home according to "applicable building codes" and "industry stand[ards]," they had suffered incidental and consequential damages stemming from drainage problems, cracking in floors and walls, HVAC problems, and improper installation of interior doors and kitchen countertops, among other issues.

The Thomases' complaint asserted claims for breach of warranty, negligence and/or wantonness, fraudulent misrepresentation, breach of contract, and negligent hiring, training, or supervision, among other claims. As relevant here, according to the complaint, Mathews and its subcontractors negligently "attempted to build said house, including the framing, examination of the site, preparation of the site and building the foundation," and negligently "built the home with serious defects including but not limited to improper drainage." The complaint also alleged that Mathews negligently failed to properly train and supervise its subcontractors "regarding the construction of the [h]ouse."

At all relevant times, Mathews was insured by a commercial general liability policy issued by AIC. In relevant part, the policy

included a "Contractors Special Condition Endorsement" and a "Tract Housing Exclusion."

The Contractors Endorsement states that, "[a]s a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors," the insured must have obtained certain listed documents from its subcontractors before starting work. The required documents include the following: (1) a written indemnity agreement from the subcontractor holding the insured harmless for all liabilities arising from the subcontractor's work; and (2) certificates of insurance from the subcontractor indicating that the insured is named as an additional insured and that coverage is at least $500,000 per occurrence; (3) proof that the subcontractor has workers' compensation insurance, if required by state law; and (4) proof of all necessary licenses. Mathews admits it "did not obtain certificates of insurance identifying Mathews as an additional insured on the subcontractors' insurance policies or written indemnity agreements from its subcontractors."

For its part, the Tract Housing Exclusion excludes coverage for claims arising out of work "that is performed on or incorporated into a 'tract housing project or development.'" The Exclusion defines "tract housing" as "any housing project or development that will exceed 25 total units when the project is completed and where the homes share many of the same characteristics including floor plan, design or lay-out."

In November 2019, AIC filed this action seeking a declaration that it owed no duty to defend Mathews against the Thomases' claims.[1]  The district court granted summary judgment to ACI, concluding that coverage was barred under both the Contractors Endorsement and the Tract Housing Exclusion.  Mathews now appeals.

## II.

We review the grant of a motion for summary judgment *de novo*.  *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015).  Summary judgment should be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The interpretation of an insurance contract is a question of law we review *de novo*.  *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1140 (11th Cir. 2020).  "Alabama courts enforce the insurance policy as written if the terms are unambiguous."  *Id.* (quotation marks omitted).  In assessing ambiguity, we "give the terms the meaning that a reasonably prudent person applying for insurance would have understood the terms to mean," instead of applying a "technical or legal" meaning.  *Id.* (cleaned up).

Whether an insurance company owes a duty to defend its insured in a proceeding must be determined primarily, though not entirely, from the allegations of the underlying complaint.  *U.S. Fid.*

---

[1] The declaratory-judgment complaint also concerned two other state-court actions against Mathews, but only the Thomasas' action is at issue here.

*& Guar. Co. v. Armstrong*, 479 So.2d 1164, 1167 (Ala. 1985). "If the injured party's complaint alleges an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.*

In general, "the burden is on the insured to establish coverage exists under an insurance policy." *Emp'rs Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002). But the carrier bears the burden of proving the application of an exclusionary provision. *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208 (11th Cir. 2024); *see also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 697 (Ala. 2001). We assume that ACI bears the burden of establishing both the Contractors Special Condition Endorsement and the Tract Housing Exclusion. *But see Snell*, 102 F.4th at 1215 (distinguishing between "limits to coverage" and "exclusions from coverage" with respect to burdens of proof).

In our view, AIC met its burden of showing that summary judgment was warranted based on the Contractors Endorsement. For that reason, we need not and do not address the scope of the Tract Housing Exclusion.

Mathews does not dispute that, under the Contractors Endorsement, it was required to obtain certain documentation, including certificates of insurance and indemnity agreements, to trigger coverage for "any claim for injury or damage based, in whole or in part, upon work performed by independent contractors." Mathews also "admits that it did not obtain the required documentation under the [Endorsement] and that it hired subcontractors to

perform the necessary labor to construct the Thomases' home." Because subcontractors performed all the construction work, it follows that AIC has no duty to defend Mathews against claims for damages based on negligent construction of the house.

Mathews responds that AIC still has a duty to defend because, in its view, some of the Thomases' claims were not based on work performed by subcontractors. Mathews contends that the negligence and negligent hiring/training/supervision claims include allegations of "direct" liability against Mathews "based solely on Mathews' conduct, not that of its subcontractors," including pre-construction "examination of the site" and subsequent "supervision" of the construction. *See Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) (explaining that direct liability claims seek to hold a principal liable for its own torts, while vicarious liability claims seek to hold a principal liable for its agents' torts). Because these claims assert direct and not vicarious liability, according to Mathews, they are independent of the subcontractors' work. *See, e.g.*, *CP & B Enters., Inc. v. Mellert*, 762 So. 2d 356, 362 (Ala. 2000) ("The claims against [the principal] based on its own alleged negligence or wantonness were independent of the claims based on [the agent's] actions and for which the plaintiff sought to impose . . . vicarious liability."). We disagree.

The critical question in this case is whether the Thomases' claims were for "damage based, in whole or in part, upon work performed by independent contractors." Although the complaint can be construed as alleging both direct and vicarious liability

claims, "it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005). And here, no reasonable construction of the Thomases' complaint supports a claim for damages not based at least in part on work performed by Mathews's subcontractors.

Under Alabama law, a claim for negligent hiring, training, or supervision requires proof of damages caused by the party being hired, trained, or supervised. *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) ("[I]mplicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury."); *see also Motley v. Express Servs., Inc.*, 386 So. 3d 766, 773 (Ala. 2023) (stating that a claim of negligent hiring, training, or supervision is established by showing, among other elements, that "the employee caused the plaintiff harm due to the incompetency"). Thus, the Thomases could not prevail on their claim for negligent hiring/training/supervision relating to the construction of the house without also showing that the subcontractors who performed the work "committed some sort of act, wrongdoing, or tort that caused [their] injury." *Jones Exp.*, 86 So. 3d at 305. As a result, the claim for negligent hiring/training/supervision in this case necessarily is based at least "in part[] upon work performed by independent contractors."

Nor can the negligence claim be construed as one for damages not caused by the subcontractors' work. Despite the complaint's bare reference to "examination of the site," which Mathews says could refer to non-subcontracted work, all the damages alleged in the complaint—foundation and drainage problems, cracking in floors and walls, HVAC problems, and improper installation of interior doors and kitchen countertops—were tied directly to the alleged failure "to build the subject house in accordance with all applicable standards, codes and specifications." It's undisputed that the house was built entirely by subcontractors. So we must conclude that the negligence claim, like the negligent hiring/training/supervision claim, was based, at least in part, on the subcontractors' work.

For these reasons, ACI has shown that the underlying claims for negligence and negligent hiring/training/supervision were covered by the Contractors Special Condition Endorsement. And it's undisputed that Mathews failed to comply with the terms of that Endorsement. We therefore affirm the grant of summary judgment in ACI's favor.

**AFFIRMED.**